Chief Judge Desmond.
In June, 1961, on a jury’s verdict, defendant was sentenced for murder, second degree (and other crimes) to imprisonment for from 20 years to life. After his appeal to the Appellate Division had resulted in a unanimous affirmance, leave to appeal to this court was granted him and he took the appeal to us on March 11, 1963. On October 3, 1963 (13 N Y 2d 899) we granted a motion made by the People to dismiss the appeal for “ mootness ” on a showing that defendant had left the United States for Cuba, that his sentence had been commuted so that the minimum would be the time already served and the maximum a life term, and that he had been released from prison on parole and deported by the United States Immigration Service to his native Cuba.
Later, when defendant’s application for vacatur of the dismissal was presented to us, we were told (mistakenly, as it now appears) that defendant had “ never executed any waiver, consent, application or other request for commutation” or agreed to his removal from prison and from the United States and that “ the first notice that he had of his deportation was at approximately 3:00 o’clock in the afternoon that he was deported.” We set aside the dismissal and put the appeal back on our calendar.
*167 However, as we now learn, we acted on an erroneous statement of alleged facts. A former Assistant Counsel to the Governor makes his affidavit as follows:
‘ ‘ I am familiar with the proceedings relating to the commutation of sentence of Francisco Molina del Rio and submit this affidavit in connection with a matter now pending in the Court of Appeals of the State of New York on Molina’s appeal from a judgment of the former Court of General Sessions convicting him of the crime of murder in the second degree.
‘ ‘ At the time Molina’s life sentence was commuted in April, 1963, I was an Assistant Counsel to the Governor of the State of New York and in such capacity I was aware of and had initial charge of all executive clemency applications that were submitted for the Governor’s attention.
‘ ‘ An application for executive clemency for Molina was submitted to the Governor by officials of the United States Department of Justice who represented to the Governor that Molina’s release would be helpful in securing the release of twenty-one American citizens then imprisoned in Cuba.
‘‘ On March 13, 1963, the Governor signed an executive order commuting Molina’s life sentence, effective at a future date. As with all such orders, the Governor’s action was contingent upon the prisoner’s voluntary acceptance of its terms. Unless or until the prisoner himself signifies in writing his desire and willingness to accept and abide by the arrangements provided, he will not be released.
‘ ‘ Accordingly, on the effective date of the Governor’s order, April' 22, 1963, I proceeded to Green Haven Prison to witness the release procedures.
“Prior to Molina’s being brought down and spoken to by the parole authorities, and to assure that the prisoner fully understood what was transpiring, the Warden of Green Haven Prison personally went to Molina’s cell with a copy of the Governor’s order, to explain the matter to him. The Warden later returned and stated that Molina fully understood, had agreed to sign the parole release agreement, and would return to Cuba.
‘ ‘ I was present when the terms and conditions of the Governor’s order of commutation were explained to Molina by the *168 senior institutional parole officer who was called to the prison from his home specifically for that purpose, and it was made explicitly clear to Molina that he could agree or not agree to his release ón these conditions, as he saw fit.
‘ ‘ The principal condition, of course, was that Molina would leave this country for Cuba and would not thereafter ever return to the United States. Molina readily agreed, and he willingly signed the customary parole release agreement, a copy of which he kept for himself.
' “ Indeed, Molina was so eager to sign that he took a pen and affixed his signature even before the handcuffs could be removed from his wrist. He was then given a considerable amount of money which he had on deposit at the prison and he was thereafter released to the custody of the Immigration authorities.
‘ ‘ I was also present when Molina boarded an airplane at Idlewild Airport on the first leg of his flight to Cuba. He sat quietly for several minutes prior to take-off, made no complaints, raised no objections and talked affably with the other Cubans who were being transported at the same time.”
Submitted to us with the affidavit is a “ Certificate of Release .or Parole ” dated March 15, 1963, signed by the three members of the State Parole Board and directing Del Rio’s release ‘‘ under the terms of the commutation of sentence granted by the Governor.” At the bottom of the certificate, signed by appellant Del Rio and dated April 22, 1963, is an acceptance of parole in which among other things Del Rio agreed to “ proceed directly to Cuba ” and promised that he would never again enter the United States and that if he should re-enter the United States he should be deemed an escaped felon and be compelled to serve the whole of his life sentence.
So it is now clear that appellant in consideration of the commutation of his long sentence and of his release from prison solemnly agreed that he would go at once to Cuba and never again enter the United States. He has ever since been in Cuba and from Cuba he has written his lawyer that he desires the appeal to be pressed. The difficulty with the latter request is that, in reason and on the precedents, he must be held to have abandoned the appeal and deliberately to have waived and foregone his right to have the appeal heard and decided.
*169 The principal New York decision is People v. Genet (59 N. Y. 80, 83 [1874]). The Genet holding is that no court proceeding on behalf of a person charged with felony may be taken unless he be in actual custody or in constructive custody after being let to bail. Genet had escaped from the jurisdiction and the court refused to extend “ to escaped convicts the means of reviewing their convictions.” The Genet holding has been followed by us in at least two instances: People ex rel. Hamilton v. Police Comr. (185 N. Y. 594 [1906]) and People ex rel. Erhardt v. Foster (299 N. Y. 628 [1949]). (Both the latter were habeas corpus proceedings but the question was the same as in Genet.)
Although courts differ as to whether the appeal should be dismissed or merely suspended, it seems everywhere to be the law and practice that an absconding defendant-appellant may not have his appeal heard (see Eisler v. United States, 338 U. S. 189; Harrelson v. State, 222 Miss. 514; State v. McMillan, 94 N. C. 945). All the courts are in agreement that in the defendant’s absence from the jurisdiction the appeal will not be heard since “A hearing would avail nothing” because ‘‘ If a new trial should be ordered, he is not here to answer further ” (Commonwealth v. Andrews, 97 Mass. 543, 544). There are other decisions which say that, if the defendant-appellant has accepted parole or other mitigation of punishment, he has thereby abandoned his appeal (State v. Anderson, 208 N. C. 771; Nicholson v. State, 69 Okla. Or. 158). Using any of such approaches, we must dismiss the present appeal since this appellant has as a condition of commutation and release promised never to come back to this State.
Defendant cites one decision in this court (Eighmy v. People, 78 N. Y. 330) which says that acceptance of a pardon while appeal pends does not deprive the pardoned defendant of his right to have his appeal determined. There should be, defendant argues, no difference between an accepted parole and an accepted pardon. But this defendant’s appeal has come to an end not only because he accepted commutation and parole but because in so doing and as a consideration for release from prison he agreed to the condition that he stay out of this State. Having so exiled himself from the jurisdiction, *170 the position as to his appeal is as if he had escaped or absconded.
The appeal should he dismissed.
Judges Dye, Fuld, Van Voorhis, Burke and Scileppi concur; Judge Bergan taking no part.
Appeal dismissed.