[958 NE2d 884, 934 NYS2d 756]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARLOS VENTURA, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAMIAN GARDNER, Appellant.

Argued September 8, 2011; decided October 25, 2011

**POINTS OF COUNSEL**

*Appellate Advocates*, New York City (*Erin R. Collins* and *Lynn W.L. Fahey* of counsel), for appellant in the first above-entitled action. Appellant was entitled to have the Appellate Division consider his appeal, which raised only a dismissal issue, despite his involuntary deportation. (*People v Pride*, 3 NY2d 545; *Griffin v Illinois*, 351 US 12; *Evitts v Lucey*, 469 US 387; *People v Crimmins*, 36 NY2d 230; *People v Rivera*, 39 NY2d 519; *People v Montgomery*, 24 NY2d 130; *People v Harrison*, 85 NY2d 794; *People v Borum*, 8 NY2d 177; *People v Bleakley*, 69 NY2d 490; *In re Winship*, 397 US 358.)

*Richard A. Brown, District Attorney*, Kew Gardens (*Karen Wigle Weiss* and *John M. Castellano* of counsel), for respondent

in the first above-entitled action. The Appellate Division properly exercised its discretion by dismissing defendant's appeal because he was not available to obey the mandate of the court. (*People v Diaz*, 7 NY3d 831; *People v Genet*, 59 NY 80; *People v Parmaklidis*, 38 NY2d 1005; *People v Del Rio*, 14 NY2d 165, 379 US 939; *People v Watson*, 99 NY2d 570; *People v Johnson*, 99 NY2d 570; *People v Mongen*, 76 NY2d 1015; *People v Headley*, 72 NY2d 931; *People v Jiminez*, 71 NY2d 963; *People v Sullivan*, 28 NY2d 900.)

*Appellate Advocates*, New York City (*Erica Horwitz* and *Lynn W.L. Fahey* of counsel), for appellant in the second above-entitled action. Appellant, a first offender with an American wife and young child, who was convicted of misdemeanor drug possession based on the same evidence for which he was acquitted of felony charges, was entitled to have the Appellate Division consider his appeal, which raised only a dismissal issue, despite his involuntary deportation. (*People v Pride*, 3 NY2d 545; *Griffin v Illinois*, 351 US 12; *Evitts v Lucey*, 469 US 387; *People v Bleakley*, 69 NY2d 490; *People v Callahan*, 80 NY2d 273; *People v Pollenz*, 67 NY2d 264; *In re Winship*, 397 US 358; *Speiser v Randall*, 357 US 513; *Davis v United States*, 160 US 469; *People v Antommarchi*, 80 NY2d 247.)

*Richard A. Brown, District Attorney*, Kew Gardens (*Karen Wigle Weiss* and *John M. Castellano* of counsel), for respondent in the second above-entitled action. The Appellate Division properly exercised its discretion to dismiss defendant's appeal. (*People v Diaz*, 7 NY3d 831; *People v Genet*, 59 NY 80; *People v Parmaklidis*, 38 NY2d 1005; *People v Del Rio*, 14 NY2d 165, 379 US 939; *People v Watson*, 99 NY2d 570; *People v Johnson*, 99 NY2d 570; *People v Mongen*, 76 NY2d 1015; *People v Headley*, 72 NY2d 931; *People v Jiminez*, 71 NY2d 963; *People v Sullivan*, 28 NY2d 900.)

*Immigrant Defense Project*, New York City (*S. Isaac Wheeler* of counsel), for Immigrant Defense Project and another, amici curiae in the first and second above-entitled actions. I. The routine dismissal of appeals in reliance on *People v Diaz* (7 NY3d 831 [2006]) critically undervalues the importance of intermediate appellate review for noncitizen defendants. (*Evitts v Lucey*, 469 US 387; *Griffin v Illinois*, 351 US 12; *Mojica v Reno*, 970 F Supp 130; *United States v Pantin*, 155 F3d 91; *Pino v Landon*, 349 US 901; *Marino v Immigration & Naturalization Serv.*, 537 F2d 686; *Planes v Holder*, 652 F3d 991; *Garcia-Maldonado v*

*Gonzales*, 491 F3d 284; *United States v Saenz-Gomez*, 472 F3d 791; *Walcott v Chertoff*, 517 F3d 149.) II. Denial of intermediate appellate review to defendants seeking a new trial erroneously presumes that a deported defendant would not be able to reenter the country for a new trial. (*People v Diaz*, 7 NY3d 831; *People v Rosario*, 26 AD3d 212; *People v Zapata*, 31 AD3d 1047; *Pickering v Gonzales*, 465 F3d 263; *Saleh v Gonzales*, 495 F3d 17; *Renteria-Gonzalez v Immigration & Naturalization Serv.*, 322 F3d 804; *Discipio v Ashcroft*, 417 F3d 448; *Cardoso-Tlaseca v Gonzales*, 460 F3d 1102; *Luna v Holder*, 637 F3d 85; *Pruidze v Holder*, 632 F3d 234.) III. The complexities of immigration law and the paucity of records of immigration court proceedings counsel against a rule requiring the intermediate courts to determine whether a conviction was a but-for cause of appellant's removal. (*Drax v Reno*, 338 F3d 98; *Martinez v Mukasey*, 551 F3d 113; *Garcia v Holder*, 638 F3d 511; *Brown v Ashcroft*, 360 F3d 346; *United States v Hamdi*, 432 F3d 115.)

## OPINION OF THE COURT

JONES, J.

In these criminal proceedings, the Appellate Division, pursuant to CPL 470.60 (1), dismissed defendants' direct appeals from their judgments of conviction prior to their hearing and disposition. Both defendants filed timely notices of appeal, but were involuntarily deported by the Department of Homeland Security's Immigration and Customs Enforcement (ICE) while their appeals were pending. The common issue presented is whether the Appellate Division abused its discretion in dismissing these appeals. We hold it did.

Following a jury trial, defendant Carlos Ventura was convicted of criminal possession of stolen property in the third degree, unauthorized use of a vehicle in the third degree, and unlawful operation of a motor vehicle on a public highway. Ventura filed a timely notice of appeal and submitted an appellate brief asserting that the evidence was legally insufficient to establish that he knowingly operated a stolen motor vehicle, and that his conviction was against the weight of the evidence.

On July 23, 2008, Ventura, a citizen of the Dominican Republic and a legal permanent resident of the United States, was paroled to the custody of ICE. He was subsequently deported on September 12, 2008, prior to the resolution of his appeal which was scheduled for oral argument on January 8, 2009. After defense counsel apprised the prosecution and the Appellate

Division of the deportation, the People moved to dismiss the appeal on grounds that Ventura was "unavailable to obey [the court's] mandate." The Appellate Division granted the motion to dismiss. A Judge of this Court granted defendant leave to appeal.

Defendant Damian Gardner was convicted of criminal possession of a controlled substance in the seventh degree. He filed a timely notice of appeal and appellate brief, contending that the evidence was legally insufficient to prove guilt beyond a reasonable doubt. Gardner, a first-time offender, completed a 60-day term of incarceration and was transferred to the custody of ICE. On February 26, 2009, prior to the determination of his appeal, Gardner was deported to Jamaica. The People's motion to dismiss Gardner's pending appeal, on the ground that he was no longer subject to the mandate of the court, was granted. A Judge of this Court granted defendant leave to appeal.

Defendants contend that the dismissal of their appeals was fundamentally unfair because their deportations were not purposeful absences that would disentitle them to appellate review. The prosecution responds that the Appellate Division did not err as it adhered to precedent and well settled principles compelling the dismissal of appeals pursued by physically absent defendants. We find the People's position unavailing as these appeals present circumstances materially distinguishable from our precedent. As such, we reverse in both cases.

Pursuant to CPL 450.10, which codifies a criminal defendant's common-law right to appeal to an intermediate appellate court, Ventura and Gardner had an absolute right to seek appellate review of their convictions (*see People v Montgomery*, 24 NY2d 130, 132 [1969] ["every defendant has a fundamental right to appeal his conviction"]). By dismissing the appeals because of the ostensible inability of defendants to obey the mandate of the court, the Appellate Division abused its discretion. Generally, courts have been inclined to dismiss appeals pursued by physically absent defendants because they voluntarily absconded, forfeiting their right to appeal. This Court has previously reasoned that "it [is] essential to any step, on behalf of a person charged with [a] felony after indictment found, that he should be in custody; either actual . . . or constructive" as "[t]he whole theory of criminal proceedings is based upon the idea of the defendant being in the power, and under the control of the court, in his person" (*People v Genet*, 59 NY 80, 81 [1874]). Accordingly, dismissals have been predicated primarily

on a policy-based rationale that courts should not aid in the deliberate evasion of justice through continued consideration of appeals (*Degen v United States*, 517 US 820, 824 [1996]; *Ortega-Rodriguez v United States*, 507 US 234, 242 [1993]; *People v Sullivan*, 28 NY2d 900 [1971]; *People v Hernandez*, 266 AD2d 116 [1st Dept 1999]; *People v Johnson*, 191 AD2d 279 [1st Dept 1993]).*

Here, this policy concern is not present. Ventura and Gardner were involuntarily removed from the country and their extrication lacked the scornful or contemptuous traits that compel courts to dismiss appeals filed by those who elude criminal proceedings. Rather, they, and other similarly situated defendants, have a greater need to avail themselves of the appellate process in light of the tremendous ramifications of deportation.

More significantly, the complete lack of intermediate appellate review materially distinguishes the instant appeals from prior cases. The People allude to this Court's precedent in *People v Del Rio* (14 NY2d 165 [1964]), *People v Parmaklidis* (38 NY2d 1005 [1976]) and *People v Diaz* (7 NY3d 831 [2006]) as plainly dispositive of the instant appeals. However, in those cases, the dismissed appeals were pending before this Court and the defendants had already received considered intermediate appellate review, in satisfaction of their statutory right. While it was within this Court's discretion, as a court of permissive appellate jurisdiction, to dismiss those appeals, the Appellate Divisions do not enjoy such unencumbered latitude. The invariable importance of the fundamental right to an appeal, as well as the distinct role assumed by the Appellate Divisions within New York's hierarchy of appellate review (*see* NY Const, art VI, § 5;

---

\*    "Neither of these appeals implicate the so-called fugitive disentitlement doctrine, which allows appellate courts to dismiss appeals of fugitive defendants who are at large while their appeals are pending, the rationale being that the defendant's escape disentitles the defendant to call upon the resources of the Court for determination of his claims. Considerations underlying the doctrine include, among other things, that the courts should not expend resources hearing an appeal when any judgment they would issue could not be enforced, nor should courts be required to adjudicate the merits of a criminal case after the convicted defendant who has sought review escapes from the restraints placed upon him pursuant to the conviction" (*People v Taveras*, 10 NY3d 227, 232 [2008] [citations and internal quotation marks omitted]).

*see e.g.* CPLR 5501 [c]), makes access to intermediate appellate courts imperative.

As we have previously recognized:

> "Unlike this court which, with few exceptions, passes on only questions of law, intermediate appellate courts are empowered to review questions of law and questions of fact. They do so in both civil cases and criminal cases. Indeed, this unique factual review power is the linchpin of our constitutional and statutory design intended to afford each litigant at least one appellate review of the facts" (*People v Bleakley*, 69 NY2d 490, 493-494 [1987] [citations omitted]).

While the avenues of appeal to this Court are limited and its purview strictly prescribed, the intermediate appellate courts possess expansive power given their fact-finding function as well as their ability to reach unpreserved issues pursuant to their "interest of justice" authority (*see* CPL 470.15 [6]). As such, these broad review abilities empower the Appellate Divisions to play a uniquely critical role in the fair administration of justice, especially when a defendant's path of appeal is often foreclosed after a final determination by the intermediate appellate court (*see* Karger, Powers of the New York Court of Appeals § 1:1 [3d ed rev 2005]).

The People direct us to an apparent point of tension stemming from the discretionary authority of the Appellate Divisions to dismiss appeals prior to their disposition. CPL 470.60 (1) provides that

> "[a]t any time after an appeal has been taken and before determination thereof, the appellate court in which such appeal is pending may, upon motion of the respondent or upon its own motion, dismiss such appeal upon the ground of mootness, lack of jurisdiction to determine it, failure of timely prosecution or perfection thereof, or other substantial defect, irregularity or failure of action by the appellant with respect to the prosecution or perfection of such appeal."

While we acknowledge the broad authority of the intermediate appellate courts to dismiss pending appeals (*see Taveras*, 10 NY3d at 233), this discretionary power cannot be accorded such an expansive view as to curtail defendants' basic entitlement to

appellate consideration. As a matter of fundamental fairness, all criminal defendants shall be permitted to avail themselves of intermediate appellate courts as "the State has provided an absolute right to seek review in criminal prosecutions" (*Montgomery*, 24 NY2d at 132).

Finally, in our view, the perceived inability to obey the mandate of the court is not implicated here. In other jurisdictions, defendants who continue prosecution of their appeals through representation of counsel are not deemed unavailable to obey the mandate of the court (*see People v Puluc-Sique*, 182 Cal App 4th 894, 899, 106 Cal Rptr 3d 365, 369 [Ct App 2010]). Moreover, disposition of the discrete appellate issues would result in either an affirmance or outright dismissal of the convictions; neither outcome would require the continued legal participation of defendants.

Accordingly, the orders should be reversed and the cases remitted to the Appellate Division for consideration of the merits of the appeal to that court.

READ, J. (dissenting in *Ventura* and concurring in *Gardner*). Criminal Procedure Law § 470.60 vests the Appellate Division with discretion to dismiss a pending appeal, subject to our review for legal error or abuse of discretion only. The majority now holds that it is *always* an abuse of discretion for the Appellate Division to dismiss the criminal appeal of an involuntarily deported noncitizen on the sole basis of unavailability. I respectfully dissent. While I concur in the result in *Gardner* on abuse-of-discretion grounds, I would affirm in *Ventura*.

## I.

The majority offers three rationales for its holding: (1) involuntarily deported noncitizen defendants have a "great[ ] need" for their appeals to be heard because of the "tremendous ramifications of deportation" (majority op at 680); (2) every criminal defendant possesses a statutory right to intermediate appellate review (*id.* at 682); and (3) in other jurisdictions, involuntarily deported noncitizens "who continue prosecution of their appeals through representation of counsel are not deemed unavailable to obey the mandate of the court" (*id.*). These suggested rationales do not furnish a basis for us to replace the Appellate Division's statutorily conferred discretion to dismiss a pending criminal appeal with a categorical rule that strips the

court of this discretion when the defendant happens to be an involuntarily deported noncitizen.[1]

First, deportation indisputably entails "tremendous ramifications." By definition, someone who is involuntarily deported would have preferred to continue to reside in this country, presumably because of the unwelcome "ramifications" of removal. But that is not a reason for a criminal appeal to go forward in those cases where the appeal's outcome would have no bearing on the defendant's immigration status—i.e., cases in which the conviction being appealed did not cause the defendant's deportation[2] or prevent or complicate his potential return to the United States. Where the Appellate Division has information indicating that such a causal connection exists, I agree that it would be an abuse of discretion to dismiss the appeal on the sole basis of the defendant's unavailability. But absent such information, the Appellate Division may, if it so chooses, dismiss the appeal of a defendant who is involuntarily physically absent from the jurisdiction, and we are not authorized to second-guess this discretionary decision.

Second, no one disputes that all defendants have "an absolute right to seek appellate review of their convictions" at the Appellate Division (majority op at 679). But this right is qualified by the Appellate Division's "broad discretion" to dismiss a criminal appeal, "whether on a party's motion or *sua sponte*, for any reason that will cause or has caused substantial interference with the appellate process" (Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.60, at 352), as already noted.

---

**1.** Defendants did not advocate for the categorical rule fashioned by the majority. They instead argued only that "a defendant who has a pending direct appeal prior to deportation *and raises only dismissal issues* is entitled to have that appeal decided on the merits by the Appellate Division" (emphasis added). As a result, the People had no notice that the Court was considering the unqualified rule it has now adopted, and consequently no opportunity to brief us about any practical problems or infelicitous effects of such a rule.

**2.** There would seem to be little chance for this to happen, though, because the Second Circuit has traditionally followed the finality rule whereby an alien has the right to exhaust all direct appeals before the underlying criminal conviction can serve as the basis for removal (*see Walcott v Chertoff*, 517 F3d 149, 155 [2d Cir 2008] ["(t)he decision to appeal a conviction . . . suspends an alien's deportability . . . until the conviction becomes final"]). Amici curiae contend, however, that the case law in the Second Circuit is less settled than *Walcott* seems to indicate, and that United States immigration authorities may be expected to continue to seek to remove defendants whose appeals are pending in the Appellate Division and, in any event, often transfer such defendants to other jurisdictions where the finality rule has been eliminated.

In *People v Diaz* (7 NY3d 831 [2006]), we ourselves exercised the discretion afforded "the appellate court" by Criminal Procedure Law § 470.60 (1) to dismiss the appeal of an involuntarily deported noncitizen on the ground that he was not presently available to obey the court's mandate. As was also the case with defendants Ventura and Gardner, the dismissal in *Diaz* was without prejudice to a subsequent motion to reinstate the appeal in the event the defendant was permitted to reenter the country and returned to New York.

Apparently unwilling to overrule a recent precedent, the majority observes that we are "a court of permissive appellate jurisdiction" while the Appellate Division "do[es] not enjoy such unencumbered latitude" and assumes a "distinct role . . . within New York's hierarchy of appellate review" because of its "fact-finding function [and] ability to reach unpreserved issues" (majority op at 681). But Criminal Procedure Law § 470.60 (1) makes no distinction on any basis (much less differences in appellate review powers) between our discretionary authority to dismiss a pending criminal appeal and the Appellate Division's.

Finally, the majority cites only one decision of an intermediate appellate court in a sister state—*People v Puluc-Sique* (182 Cal App 4th 894, 106 Cal Rptr 3d 365 [2010])—as evidence that other jurisdictions adhere to the new rule it has fashioned, and even this case is not on point. In *Puluc-Sique,* the People argued that the court was required to dismiss the defendant's appeal because deportation placed him beyond the jurisdiction of California's courts (182 Cal App 4th at 899, 106 Cal Rptr 3d at 369). The court rejected this proposition, but did not adopt the majority's position—i.e., that a court may *never* dismiss the criminal appeal of an involuntarily deported noncitizen on the sole basis of unavailability. Instead, the court concluded that "[a]ppellate disentitlement is a *discretionary* doctrine that must be applied in a manner that takes into account *the equities of the individual case,*" and that the equities present in this particular individual case did not favor dismissal of the defendant's appeal (182 Cal App 4th at 901, 106 Cal Rptr 3d at 370 [emphasis added]).

Indeed, although the arguably relevant out-of-state cases are few in number, not one of our sister states takes the approach adopted by the majority. Instead, these decisions appear to turn on whether the conviction being appealed caused the defendant's deportation or prevented or complicated his potential return to the United States. For example, over 20 years ago the

Supreme Court of Washington in *State v Ortiz* (113 Wash 2d 32, 774 P2d 1229 [1989]) reversed the intermediate appellate court's judgment dismissing an involuntarily deported noncitizen's criminal appeal, but on the basis that the conviction sought to be appealed precluded the defendant's return to this country (*see also Cuellar v State*, 13 SW3d 449, 451 [Tex App 2000] [appeal of narcotics conviction is not moot where conviction prevents individual from reentering United States or obtaining visa]; *People v Garcia*, 89 P3d 519, 520 [Colo App 2004] [appeal dismissed as moot "because defendant is no longer in the United States and is subject to a permanent bar on attempted reentry into this country, he will not serve his sentence here, and thus, the outcome of the appeal has no practical effect upon him"]).

Here, defendant Damian Gardner was deported for overstaying his visa. The People informed the Appellate Division, however, that defendant's wife, an American citizen, had "filed an I-485 petition [with the United States Immigration and Customs Enforcement] requesting that defendant's immigration status be adjusted, but that the petition was denied *because of defendant's criminal record*"; and that *"defendant's conviction did affect his immigration status* in that his wife's petition may have been granted had he not been convicted of *the crime in this case*" (emphasis added). In light of these circumstances, I conclude that the Appellate Division abused its discretion when it dismissed Gardner's appeal on the sole basis of his unavailability to obey the court's mandate. Conversely, there is nothing in the record to suggest that the conviction for which defendant Carlos Ventura sought review—as opposed to his unrelated, and unappealed, judgment of conviction and sentence for burglary—caused his deportation or would prevent or complicate his potential return to the United States. Nor is there any other information in the record that would support a determination on our part that the Appellate Division abused its discretion when it dismissed Ventura's appeal on the ground that he was unavailable to obey the court's mandate.

## II.

The majority's decision seems to be motivated, at least in part, by a suspicion that the Appellate Divisions have interpreted *Diaz* to endorse the dismissal of the criminal appeals of involuntarily deported noncitizen defendants on unavailability grounds in all cases, without exception. To the extent this is so (and I do

not see evidence of it), the proper corrective for blanket dismissals is not a rule requiring the blanket denial of dismissals, which is what the majority has created. Criminal Procedure Law § 470.60 sets the standard: the Appellate Division possesses discretion to consider dismissal motions on their individual merits, subject to our review for legal error or abuse of discretion. Even assuming that we may properly curb the Appellate Division's discretion in a way that section 470.60 does not, this would seem to be very poor policy: especially in an era of increasing case loads and fiscal constraints, the Appellate Division should be able to decide not to spend its time on an appeal whose outcome would have no practical effect because the defendant has been deported from this country and enjoys no discernible prospects for reentry.

Chief Judge LIPPMAN and Judges CIPARICK and SMITH concur with Judge JONES; Judge READ dissents and votes to affirm in a separate opinion in which Judges GRAFFEO and PIGOTT concur.

In *People v Ventura*: Order reversed, etc.

Chief Judge LIPPMAN and Judges CIPARICK and SMITH concur with Judge JONES; Judge READ concurs in result in a separate opinion in which Judges GRAFFEO and PIGOTT concur.

In *People v Gardner*: Order reversed, etc.