This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-----------------------------------------------------------------

No. 60
The People &c.,
          Respondent,
        v.
Andre Harrison,
          Appellant.
------------------------
No. 61
The People &c.,
          Respondent,
        v.
Marino Serrano,
          Appellant.


Case No. 60:
        Lisa Napoli, for appellant.
        Deborah E. Wassel, for respondent.
        Immigrant Defense Project, amicus curiae.


Case No. 61:
        Amy Donner, for appellant.
        Joyce Slevin, for respondent.
        Immigrant Defense Project, amicus curiae.


FAHEY, J.:

        In People v Ventura (17 NY3d 675 [2011]), we held that

the Appellate Division abused its discretion in dismissing two

pending direct appeals due to the involuntary deportations of the

defendants.  In the present appeals, we are asked to clarify

Ventura's application.  We hold that Ventura prohibits

- 1 -

intermediate appellate courts from dismissing pending direct appeals due to the defendant's involuntary deportation, regardless of the contentions raised by the defendant on appeal. We conclude, however, that, consistent with this Court's authority to dismiss pending permissive appeals due to the defendant's involuntary deportation, intermediate appellate courts retain their discretionary authority to dismiss permissive appeals on that ground after Ventura.

I.

Defendant Andre Harrison, a citizen of Jamaica, was convicted, upon his plea of guilty, of attempted criminal possession of a weapon in the second degree. After serving his sentence, he was transferred into the custody of U.S. Immigration and Customs Enforcement (ICE). While in ICE custody, Harrison moved pursuant to CPL 440.10 to vacate the judgment, alleging, among other things, that his attorney gave him erroneous advice about the immigration consequences of his guilty plea. Supreme Court denied Harrison's motion without a hearing. Harrison sought leave to appeal to the Appellate Division pursuant to CPL 460.15. A Justice of that court granted Harrison's application. While Harrison's permissive appeal was pending in the Appellate Division, he was deported. The People moved to dismiss the appeal on the ground that Harrison was no longer available to obey the mandate of the court.

The Appellate Division granted the People's motion to

dismiss Harrison's appeal (115 AD3d 980 [2d Dept 2014]), distinguishing Ventura on two grounds. First, the court noted that in Ventura, the defendants had raised issues that would result "in either an affirmance or outright dismissal of the convictions," neither of which would require the defendants' further legal participation, whereas if Harrison were successful on appeal, his further legal participation would be required (id. at 982). Second, the Appellate Division reasoned that in Ventura, this Court considered the dismissal of two direct appeals, but Harrison was appealing by permission (see id. at 981-982). A Judge of this Court granted Harrison leave to appeal (24 NY3d 1084 [2014]).

Defendant Marino Serrano, a citizen of Mexico, pleaded guilty to driving while intoxicated and driving while ability impaired. While his direct appeal was pending before the Appellate Term, Serrano was deported. The People moved to dismiss the appeal on the ground that Serrano was unavailable to obey the mandate of the court.

The Appellate Term granted the People's motion to dismiss Serrano's direct appeal (45 Misc 3d 69 [App Term, 2d Dept, 11th & 13th Jud Dists 2014]). The court concluded that Serrano's contention that the plea colloquy was insufficient had merit (see id. at 71-72). The court nevertheless dismissed Serrano's direct appeal, holding that Ventura was distinguishable. The Appellate Term noted that in Ventura, the

defendants raised appellate issues that would result in " 'either an affirmance or outright dismissal of the convictions; neither outcome would require the continued legal participation of [the] defendants' " (id. at 72, quoting Ventura, 17 NY3d at 682).  By contrast, Serrano raised an appellate issue that, if meritorious, would require his continued legal participation, "which is not possible because he has been deported" (45 Misc 3d at 72).  A Judge of this Court granted Serrano leave to appeal (25 NY3d 953 [2015]).

                              II.

         In Ventura, this Court considered whether the Appellate Division had abused its discretion in dismissing two direct appeals.  Both defendants, Ventura and Gardner, had been involuntarily deported while their direct appeals were pending. We held that cases in which appellate courts had dismissed appeals because the defendant had voluntarily absconded from the jurisdiction were inapposite, inasmuch as Ventura and Gardner were involuntarily deported, and "their extrication lacked the scornful or contemptuous traits that compel courts to dismiss appeals filed by those who elude criminal proceedings" (Ventura, 17 NY3d at 679-680).  We reiterated that CPL 450.10 granted the defendants "an absolute right to seek appellate review of their convictions" (id. at 679, citing People v Montgomery, 24 NY2d 130, 132 [1969]).

         We further distinguished this Court's own discretion to

dismiss pending permissive appeals on the ground of involuntary deportation, reasoning that "[t]he invariable importance of the fundamental right to an appeal, as well as the distinct role assumed by the Appellate Divisions within New York's hierarchy of appellate review . . . , makes access to intermediate appellate courts imperative" (Ventura, 17 NY3d at 680-681).  We "acknowledge[d] the broad authority of the intermediate appellate courts to dismiss pending appeals," but we held that "this discretionary power cannot be accorded such an expansive view as to curtail defendants' basic entitlement to appellate consideration" (id. at 681-682).  We concluded that, "[a]s a matter of fundamental fairness, all criminal defendants shall be permitted to avail themselves of intermediate appellate courts as 'the State has provided an absolute right to seek review in criminal prosecutions' " (id. at 682, quoting Montgomery, 24 NY2d at 132).

Finally, we noted that "in our view, the perceived inability to obey the mandate of the court is not implicated here" (Ventura, 17 NY3d at 682).  We observed that "[i]n other jurisdictions, defendants who continue prosecution of their appeals through representation of counsel are not deemed unavailable to obey the mandate of the court" (id.).  The Court further noted that "disposition of the discrete appellate issues would result in either an affirmance or outright dismissal of the convictions; neither outcome would require the continued legal

participation of defendants" (id.).

This last sentence of the Court's decision in Ventura provides the sole basis upon which the Appellate Term distinguished Serrano from Ventura in dismissing Serrano's pending direct appeal. The Appellate Term concluded that because Serrano's further legal participation would be required if he were successful on appeal, the holding of Ventura did not apply (see Serrano, 45 Misc 3d at 72). We disagree.

The fact that Ventura and Gardner were raising appellate issues that would result in either an affirmance or outright dismissal was not a necessary predicate to the Court's holding in Ventura, but rather an additional reason supporting the Court's conclusion that the Appellate Division had abused its discretion in dismissing the direct appeals. The Court's holding in Ventura was based upon the fundamental right to a direct appeal to the intermediate appellate courts granted to all criminal defendants by CPL 450.10. We now clarify that Ventura applies to all direct appeals pending in intermediate appellate courts, regardless of the appellate contentions raised by the defendant. The Appellate Term's interpretation of Ventura would discourage non-citizen defendants from raising on direct appeal potentially meritorious contentions that would not result in outright dismissal. We cannot countenance a result that would so impair a criminal defendant's "fundamental right" to a direct appeal pursuant to CPL 450.10 (Ventura, 17 NY3d at 680).

We do not discount the People's arguments about the practical difficulties that may arise if a judgment is reversed on appeal and the defendant's further legal participation is required, for example to enter a guilty plea or to stand trial, but the defendant is unable to return to the country.  Resolution of those issues must be left to the trial court and the parties, and will depend upon the unique circumstances of each case, as well as the immigration status of each defendant.

In addition, we reject the People's contention in Serrano that the Appellate Term did not abuse its discretion in dismissing the appeal because Serrano's conviction did not cause his deportation.  Our holding in Ventura did not depend upon any causal relationship between the defendant's conviction and deportation, and the Appellate Term did not distinguish Serrano from Ventura on that ground.

In summary, we conclude that this Court's holding in Ventura prohibits an intermediate appellate court from exercising its discretion to dismiss a pending direct appeal on the ground that the defendant has been involuntarily deported, regardless of the appellate contentions raised by the defendant.  The Appellate Term therefore abused its discretion in dismissing Serrano's direct appeal.

                              III.

We reach a different conclusion with respect to the Appellate Division's dismissal of Harrison's pending permissive

appeal.  Our holding in Ventura was based upon a criminal defendant's fundamental right to a direct appeal granted by CPL 450.10.  That statute has no application, however, in the context of permissive appeals.  Rather, CPL 450.15 governs an appeal from an order denying a CPL 440.10 motion to vacate a judgment, and provides that a certificate granting leave to appeal must be obtained pursuant to CPL 460.15 (see CPL 450.15 [1]).  In Ventura, this Court spoke of a criminal defendant's "absolute right," "statutory right," "fundamental right," and "basic entitlement" to appellate consideration of a direct appeal (Ventura, 17 NY3d at 679-682).  A defendant has no such fundamental right or basic entitlement to appeal where the defendant must seek permission to appeal to the intermediate appellate court pursuant to CPL 450.15.

Indeed, we reaffirmed in Ventura our own discretionary authority to dismiss permissive appeals pending before this Court on the ground that the defendant has been involuntarily deported.  We held that in People v Diaz (7 NY3d 831 [2006]) and other cases in which this Court had dismissed a pending appeal on the ground of involuntary deportation, "the defendants had already received considered intermediate appellate review, in satisfaction of their statutory right," and that this Court, "as a court of permissive appellate jurisdiction," had the discretion to dismiss those appeals (Ventura, 17 NY3d at 680).  Similarly, in Harrison, the Appellate Division was acting "as a court of permissive

appellate jurisdiction" (id.).  Where an intermediate appellate court has permissive jurisdiction over a pending appeal, the intermediate appellate court retains its discretion to dismiss the pending permissive appeal due to the defendant's involuntary deportation.

The dissent conflates the right to a direct appeal with a discretionary appeal from an order denying a CPL 440.10 motion in analogizing this case to Ventura.  As we held in Ventura, Harrison had an absolute right to a direct appeal; he waived that right as part of his plea agreement.  He later brought the present motion claiming ineffective assistance of counsel.  Such claims are generally properly raised for the first time through CPL 440.10 motions.  The dissent claims that in these circumstances, "[d]efendant . . . has not had any appellate review of his claim" (dissenting op., at 2).  If that were the standard -- entitlement to one appeal, whether direct or collateral -- all such CPL 440.10 motions following a plea of guilty and waiver of direct appeal would require Appellate Division review.  This is not the standard, however, inasmuch as CPL 450.15 (1) provides that appeals from orders denying CPL 440.10 motions are permissive.

To say that an abuse of discretion occurred because the Appellate Division had already accepted the appeal contradicts the reasoning of our decision in Diaz.  There, as the Appellate Division did here, this Court permissively granted leave to

appeal (see People v Diaz, 5 NY3d 852 [2005]).  Nearly one year later, we exercised our discretion and dismissed the appeal, concluding that the defendant's involuntary deportation in the interim presented a situation "analogous to that of mootness" (Diaz, 7 NY3d at 832).  The Appellate Division had similar discretion in this case.  The holding of Ventura does not compel us to limit the Appellate Division's discretion such that the Appellate Division may not dismiss a pending permissive appeal based upon " 'the perceived inability to obey the mandate of the court' " (dissenting op., at 3, quoting Ventura, 17 NY3d at 682).  The holding in Ventura was based upon the right to a direct appeal which could not be defeated based upon that concern.  In Harrison, as in Diaz, there was no such right to appeal, and the Appellate Division retained its discretion to dismiss the appeal.

Of course, the intermediate appellate court's exercise of that discretion remains reviewable by this Court for abuse of discretion as a matter of law.  There are circumstances in Harrison that would have supported the Appellate Division's retention of the appeal, including that Harrison was raising a contention that could only be raised by way of a CPL 440.10 motion, and the People did not dispute that Harrison had been deported because of the conviction he was challenging in that motion.  Nevertheless, unlike the Appellate Division, which may substitute its own discretion for that of the nisi prius court

even absent an abuse of discretion, we have no power to substitute our own discretionary judgment for that of the Appellate Division (see generally People v Guay, 18 NY3d 16, 22 [2011]).  We may reverse the discretionary determination of the Appellate Division only if its exercise of discretion was so arbitrary or unreasonable as to constitute an abuse of discretion as a matter of law (see NY Const, art VI, § 3 [a]).  Here, we cannot conclude that the Appellate Division abused its discretion as a matter of law in dismissing Harrison's pending permissive appeal due to his involuntary deportation.

Accordingly, in Harrison, the order of the Appellate Division should be affirmed and, in Serrano, the order of the Appellate Term should be reversed, and the case remitted to the Appellate Term for consideration of the merits of the appeal to that court.

People v Andre Harrison, People v Marino Serrano

No. 60, 61

RIVERA, J.(dissenting in People v Andre Harrison; concurring in People v Marino Serrano):

I agree with the decision in People v Serrano, for the reasons set forth in the opinion. However, I dissent in People v Harrison because the majority relies on a meaningless distinction between two classes of defendants who have had their respective appeals dismissed, solely on the grounds that they have been deported: one who files a direct appeal challenging the conviction, and another, like Harrison, who files a 440.10 motion claiming the plea was not knowing, voluntary, and intelligent because defense counsel failed to properly explain the immigration consequences of the plea. However, the two classes of defendants are similarly positioned and therefore the rule of People v Ventura should apply with full force in both cases.

The majority concludes that because the latter class of defendants seeks review under CPL 450.15 and 460.15, Ventura is inapplicable and instead the appeal is subject to the reasoning in People v Diaz. This view ignores critical aspects of the rationale that led the Court in Ventura and its companion case, People v Gardner, to reject application of the justification for dismissing an appeal where a defendant evades criminal process to cases involving an involuntarily deported defendant (People v

- 1 -

Ventura, 17 NY3d 675, 680-681 [2011]). Elaborating on the unique concerns impacting on deportees, the Court stated that they "have a great[] need to avail themselves of the appellate process in light of the tremendous ramifications of deportation" (id. at 680). These defendants risked "the complete lack of intermediate appellate review" if their appeals were dismissed solely on the grounds that they were deported (id.). Given the right to appeal and the "distinct role assumed by the Appellate Divisions within New York's hierarchy of appellate review . . . [,] access to intermediate appellate courts [is] imperative" (id.). Like the defendants in Ventura, defendant here was also involuntarily deported and did not intentionally seek to avoid criminal process. To the contrary, he has affirmatively sought judicial review of his claim throughout his detention and after his deportation. Defendant too faces dire consequences related to his deportation, including separation from his family and home.

       In contrast, the analysis of Diaz is ill-suited for deciding defendant's case. Diaz involved a defendant who "had already received considered intermediate appellate review" (Ventura, 17 NY3d at 680; People v Diaz, 7 NY3d 831, 832 [2006]). Defendant here has not had any appellate review of his claim because under New York law his 440.10 motion is his only procedural vehicle to challenge his plea based on his counsel's alleged ineffective assistance in providing erroneous advice (majority op., at 10; People v Baret, 23 NY3d 777, 806 [2014]

[Lippman, C.J., dissenting]).

Further, the Court in Diaz exercised its discretion in dismissing because the defendant was unavailable to obey the mandate of the Court (7 NY3d at 832).  As Ventura made clear, at least for intermediate appellate review, "the perceived inability to obey the mandate of the court is not implicated" (17 NY3d at 682).  Thus, Diaz has little relevance to defendant's case.  Moreover, both the Courts in Ventura and Diaz recognized that deportation does not, in and of itself, mandate dismissal (Diaz, 7 NY3d at 832 [deportation did "not mandate dismissal of the appeal, (but) present(ed) a situation analogous to that of mootness"]; Ventura, 17 NY3d at 682 [inability to obey court's mandate not implicated by defendants' deportation, and provides no basis to dismiss appeal]).

Contrary to the majority's view, I do not conflate the right to a direct appeal with a discretionary appeal (see majority op., at 9), but rather ground my analysis on the underlying reasoning and purpose served by this Court's decision in Ventura.  Here, because of the specific nature of defendant's ineffective assistance of counsel claim it cannot be reviewed on direct appeal.  As a consequence, dismissal places defendant at risk, like the defendants in Ventura, of a "complete lack of intermediate appellate review," due solely to his deportation

(<u>Ventura</u>, 17 NY3d at 680).[1]  Therefore, <u>Ventura</u>, not <u>Diaz</u>, is relevant to our consideration of defendant's claim.

Nor does my interpretation of <u>Ventura</u> mean that the Appellate Division is without discretionary authority to dismiss an appeal from an unsuccessful CPL 440.10 motion based on the same concerns that the court generally fixes with respect to such post-conviction motions.[2]  Such a broad rule is not implicated by this case, or necessary to resolve the issues raised herein. Rather than *require* an intermediate court to consider a discretionary appeal *solely because* a defendant is deported, the appropriate rule, in accordance with <u>Ventura</u>, is that an intermediate appellate court *may not refuse* to consider an appeal for *no reason other than* defendant's status as a deportee.

---

[1]The majority is incorrect to the extent it suggests that a defendant's waiver of appeal forecloses direct appellate review of any and all claims because this Court has held that certain claims are not waivable (<u>see</u> <u>e.g.</u> <u>People v Seaberg</u>, 74 NY2d 1, 9-10 [1989] [constitutional speedy trial claims, challenges to the legality of court-imposed sentences or the voluntariness of the plea, and questions as to a defendant's competency to stand trial survive a valid waiver of appellate review]).  In any event, under New York law defendant's only procedural vehicle for challenging the plea based on ineffective assistance of counsel is a post-conviction CPL 440 motion, and he did not waive his right to pursue such relief.

[2]Appellate courts retain broad authority under CPL 470.60 (1) to dismiss an appeal on a basis other than deportation (<u>see</u> CPL 470.60 [1] [providing for dismissal "upon the ground of mootness, lack of jurisdiction to determine it, failure of timely prosecution or perfection thereof, or other substantial defect, irregularity or failure of action by the appellant with respect to the prosecution or perfection of such appeal"]).

We should not lose sight of the fact that defendant sought, by his 440.10 motion, to avoid the deportation that now prevents his appeal and holds his challenge in abeyance until he is able to return to the United States.  Although the majority concludes the Appellate Division did not abuse its discretion by dismissing defendant's appeal, in Ventura both the majority and dissent agreed that it was an abuse of discretion for an appellate intermediate court to dismiss a deported defendant's appeal on the sole basis of the defendant's unavailability where the conviction being appealed was the cause of defendant's deportation (Ventura, 17 NY3d at 678; id. at 682 [Read, J., dissenting]).

Beyond the apparent consequences to defendant from this proverbial "Catch-22", there is another compelling fairness argument that looms large over this case.  Defendant was in the custody of the Immigration and Customs Enforcement Unit of the United States Department of Homeland Security awaiting deportation on the grounds of his conviction, when a justice of that court granted leave to appeal.  Defendant remained in federal custody for another 16 months, awaiting consideration of his appeal, until he was eventually deported.  As the record discloses, but for the delays in the appellate process, the Appellate Division would have considered his challenge to the plea.  Under these circumstances, it was an abuse of discretion to dismiss the appeal because the very action defendant sought to

prevent by challenging his conviction was the basis of the Appellate Division's dismissal.  Nevertheless, defendant and others similarly situated, who have no control over the delays that may doom their appeals, are now foreclosed from intermediate appellate review because they have been deported.  Therefore, I dissent.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

For Case No. 60:  Order affirmed.  Opinion by Judge Fahey.  Chief Judge DiFiore and Judges Pigott, Abdus-Salaam, Stein and Garcia concur.  Judge Rivera dissents in an opinion.

For Case No. 61:  Order reversed and case remitted to the Appellate Term, Second Department, for consideration of the merits of the appeal to that court.  Opinion by Judge Fahey. Chief Judge DiFiore and Judges Pigott, Rivera, Abdus-Salaam, Stein and Garcia concur, Judge Rivera in a concurring opinion.

Decided May 5, 2016