(July 14, 2016)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANGELO TEJEDA, Appellant. [35 NYS3d 101]—

Appeal from judgment, Supreme Court, New York County (Brenda G. Soloff, J.), rendered July 13, 2004, convicting defendant, upon his plea of guilty, of criminal sale of a controlled substance in the third degree, and sentencing him to a term of $1^{3}/_{4}$ to $5^{1}/_{4}$ years, held in abeyance, and the matter remitted for further proceedings in accordance herewith.

The issue here is whether a defendant whose case still is on direct appeal should be denied the benefit of the Court of Appeals' ruling in *People v Peque* (22 NY3d 168 [2013], *cert denied* 574 US —, 135 S Ct 90 [2014]), which is rooted in federal constitutional law, because defendant absconded from parole before his attorney perfected this appeal. We conclude *Peque* should apply to defendant's case.

In *Peque*, the Court of Appeals held that a trial court is obligated to apprise any defendants that if the defendant is not an American citizen, he or she may be deported as a consequence of a guilty plea to a felony (*Peque* at 197). That decision acknowledged that under federal immigration law, deportation, in many cases, is an inevitable consequence of a noncitizen's guilty plea and that as part of the defendant's decision to make a voluntary and intelligent choice to plead guilty, the defendant must be alerted to the deportation consequences by the court. In the instant case, the court did not advise defendant about the immigration consequences flowing from his plea.[1] We recognized in *People v Brazil* (123 AD3d 466, 467 [1st Dept 2014], *lv denied* 25 NY3d 1198 [2015]), that *Peque* is applicable to cases still on direct appeal. Thus, unless a different rule applies to defendants who abscond while their appeal is pending, *Brazil* mandates *Peque* should control here.

In July 2001, defendant pleaded guilty to criminal sale of a controlled substance in the third degree, and was subsequently sentenced to a prison term of $1^{3}/_{4}$ years to $5^{1}/_{4}$ years. In 2004, defendant was informed by federal immigration authorities that he was subject to removal because of this 2001 conviction, and in 2005 a federal immigration judge ordered that he be removed to the Dominican Republic. In February 2005, defendant was paroled from state custody for purposes of deportation, but was not deported.

In March 2007, defendant stopped reporting to his parole officer, and a warrant was issued. Defendant was rearrested in April 2014, and parole violation proceedings ensued. Defendant's parole was revoked in December 2014, and defendant

---

1. Additionally, defendant's brief states his plea counsel did not discuss the immigration consequences of the guilty plea.

was reincarcerated. Defendant was released in 2015, and is presently serving the undischarged portion of his sentence on parole.

Following the April 2014 arrest, defendant moved for an enlargement of the time to perfect his appeal. On September 18, 2014, this Court granted defendant's motion and on October 23, 2014, denied the People's motion seeking dismissal of defendant's appeal based on the failure to timely perfect the appeal. On April 21, 2015, this Court again granted defendant's motion to enlarge, and denied the People's cross motion to dismiss the appeal.[2]

Although the People recognize that this Court's decision in *Brazil* requires retroactive application of *Peque* to cases on direct appeal, the People argue for an exception when defendants abscond. As the Court of Appeals noted in the recent decision *People v Harrison* (27 NY3d 281 [2016]), "[t]he invariable importance of the fundamental right to an appeal, as well as the distinct role assumed by the Appellate Divisions within New York's hierarchy of appellate review . . . , makes access to intermediate appellate courts imperative" (*id.* at 286, quoting *People v Ventura*, 17 NY3d 675, 680-681 [2011]). In New York, "[u]nder traditional common-law principles, cases on direct appeal are generally decided in accordance with the law as it exists at the time the appellate decision is made" (*People v Jean-Baptiste*, 11 NY3d 539, 542 [2008], quoting *People v Vasquez*, 88 NY2d 561, 573 [1996]). There is no reason to carve out an exception to *Peque* for direct appeals when a defendant absconds while on parole, and the general rule, which applies the current controlling precedent should apply here. The decision in *Peque* is premised on the importance of a defendant fully understanding the implication of the decision to plead guilty, and the far reaching implications of forcible removal, both for a defendant and his or her family. Those consequences are the same for defendant here, as they would be for a defendant who never absconded on parole.

Neither the People nor the dissent cites to any case directly on point. *Brazil*, relied on by the People, is distinguishable. In that case, defendant's affirmative misrepresentation to the court that he was a United States citizen was directly related

---

**2.** The People's motions focused on the delay in perfecting, and they sought dismissal for failure to prosecute. However, in their motions, contrary to the dissent's position, the People failed to inform the Court that defendant had absconded or that he had failed to appear. Nor did they argue that the appeal should be dismissed due to defendant's misconduct in ceasing to report to parole.

to the relief sought, i.e., the failure of the court to advise him of potential deportation consequences (*Brazil* at 467). However, *Brazil* does not warrant the denial of *Peque* relief merely because defendant absconded before his appeal was heard. Here, defendant's actions in ceasing to report to his parole officer are unrelated to the claim on appeal, i.e., the court's failure to advise him of potential deportation consequences.

The dissent cites to *People v Diaz* (41 Misc 3d 351 [Sup Ct, NY County 2013]). However, that decision is not binding on this Court, and we decline to follow it. Further, *People v Allen* (309 AD2d 624 [1st Dept 2003], *lv denied* 1 NY3d 567 [2003]) is factually distinguishable because that case involves retroactive benefit of a statutory sentencing amendment, while the instant case deals with the applicability of *Peque* as a new rule of federal constitutional law. *Campbell v Thomas* (73 AD3d 103 [2d Dept 2010]), cited by the dissent, involves the equitable powers of a court in a civil matter, something that is not at issue here. Moreover, unlike in *Campbell* and the cases cited therein, there is no direct connection between defendant's actions and the right the dissent contends he forfeited.

The People's argument that they will be prejudiced if the plea is vacated because of the passage of time does not warrant denial of appellate relief to defendant. From the time that defendant ceased reporting to his parole officer in 2007 to the time of his new unrelated arrest in 2014, the People never sought to dismiss the appeal, and thus, their current focus on the amount of time that has passed is not convincing. Moreover, when they sought dismissal, the People did not apprise the court of the fact that defendant had absconded, nor did they identify any specific witnesses or evidence that would be unavailable if the appeal were allowed to proceed. In any event, there often are practical difficulties when a court orders a new trial, but that is not a reason to deny a defendant his or her rights.

No basis exists to penalize defendant by not having the current law applied. The inevitable consequence of the dissent's analysis is that a defendant who absconds while his or her appeal is pending would lose the right to have an appellate court apply favorable case law which was issued after they absconded. Such a result would be unprecedented.

Contrary to the dissent's contention, there are still significant consequences to a defendant who absconds because that defendant faces a parole violation, and our holding does not alter that proposition. Moreover, if the People believed there should have been a "penalty" for defendant absconding while his ap-

peal was pending, they should have sought to dismiss the appeal on this ground while defendant was absent. If they had brought this fact to the Court's attention, the motion might have been granted (*see generally People v Rodriguez*, 67 AD3d 596, 597 [1st Dept 2009], *lv denied* 14 NY3d 706 [2010]).

All we order in this case is a *Peque* hearing; whether defendant's plea would be vacated following such a hearing is not before us now. Because defendant's actions are not directly related to the failure of the court to advise defendant of potential immigration consequences, defendant should be afforded the opportunity to move to vacate his plea upon a showing that there is a "reasonable probability" that he would not have pleaded guilty had the court advised him of the possibility of deportation (*Peque* at 198, 200-201).

Accordingly, we remit for the remedy set forth in *Peque* (22 NY3d at 200-201), and hold the appeal in abeyance for that purpose. Concur—Renwick, Richter, and Kapnick, JJ.

Tom, J.P., and Webber, J., dissent in a memorandum by Webber, J., as follows: I respectfully disagree with the majority. Defendant should not be permitted to benefit, by his misconduct, from a favorable change in the law occurring many years after his direct appeal should have been perfected.

On July 29, 2001, defendant sold cocaine to three separate buyers in three separate transactions. Defendant was arrested on September 4, 2001. By indictment, defendant was charged with two counts of criminal sale of a controlled substance in the second degree and one count of criminal sale of a controlled substance in the third degree.

On December 20, 2001, defendant, with counsel present, pleaded guilty to one count of criminal possession of a controlled substance in the third degree, a class B felony, in full satisfaction of the indictment, in exchange for a promised minimum sentence of no more than three years in prison, with the maximum term not to exceed nine years. Defendant acknowledged, inter alia, that his plea was voluntary, that he was surrendering certain specified trial rights by entering into the plea, and that no other promises were made to him to induce his plea aside from the specified sentence parameters. Defendant, who was not a U.S. citizen, was not informed by the plea court of any possible immigration consequences of his plea. Defendant admitted that on July 29, 2001, while in New York County, he sold one half ounce or more of cocaine to another individual. On July 13, 2004, defendant was sentenced

to a prison term of from 1¾ to 5¼ years.* On November 16, 2004, federal immigration authorities notified defendant that he was removable from the country based on his 2001 conviction.

On December 16, 2004, defendant, pro se, moved to enlarge his time to file a notice of appeal. By order entered January 11, 2005, this Court granted defendant's motion to the extent of deeming the notice of appeal timely filed. On January 13, 2005, an Immigration Judge ordered defendant removed from the United States to his native Dominican Republic. In or about February 2005, defendant was paroled from state custody for purposes of deportation. Although the Board of Immigration Appeals affirmed the Immigration Judge's order, defendant was not deported at that time. This Court, based in part on the parties' stipulation, granted defendant an enlargement of the time to perfect to the April 2007 Term.

In March 2007, defendant absconded while on parole, and used the name Angelo Tejada. Defendant's whereabouts remained unknown until April 2014 when he was arrested for a new, unrelated offense. By order entered April 21, 2015, this Court granted defendant's motion to the extent of enlarging his time to perfect to the September 2015 Term.

On December 31, 2014, defendant's parole was revoked and he was returned to state prison to serve his sentence. Defendant, in his March 2015 application for resentencing under the Drug Law Reform Act of 2009—which was ultimately denied—asserted that he discontinued reporting to his parole officer in 2007 out of fear he would be deported and separated from his family.

In November 2013, the Court of Appeals decided in *Peque* that a defendant who is not a U.S. citizen must be apprised by the court of the immigration consequences of a guilty plea. The *Peque* holding was retroactive to the extent it applied to any case then pending on direct appeal at that time. Here, defendant's appeal was pending at the time he absconded in April 2007, and it remained pending at the time of his rearrest in April 2014. If defendant had timely perfected his appeal in 2007, *Peque* would be inapplicable.

The majority asserts that the defendant should not be denied the benefit of the ruling in *Peque* merely because at an earlier date he ceased reporting to his parole officer. Defendant absconded for over seven years during which time he knowingly attempted to evade detection by the use of another name.

---

* The record is silent as to why there was a delay in defendant's sentence.

His return in 2015 was not voluntary, but rather the result of a new arrest. It is my opinion that defendant should not be permitted to benefit, by his misconduct, from a favorable change in the law occurring many years after his direct appeal should have been perfected (*see People v Diaz*, 41 Misc 3d 351, 354 [Sup Ct, NY County 2013]; *see also People v Allen*, 309 AD2d 624 [1st Dept 2003], *lv denied* 1 NY3d 567 [2003] [denying presentencing absconder benefit of otherwise applicable statutory amendment]).

As the majority points out, *Diaz* is not binding upon this court. However, it is instructive. In *Diaz*, defendant absconded for five years and sought to invoke the retroactive application of *Padilla v Kentucky* (559 US 356 [2010]). The court aptly observed that the "[d]efendant, by his own wrongdoing, . . . forfeited the right to any retroactive application of *Padilla* based on the fact that his case [was] not yet final on direct review" (*Diaz* at 354). The court noted that allowing the defendant to benefit from his own wrongdoing runs afoul of the common law doctrine of "forfeiture by wrongdoing" which recognizes that the wrongdoer is deemed to have forfeited the benefit that would flow from his wrongdoing (*id.* at 353, citing, inter alia, *Giles v California*, 554 US 353 [2008]; *Campbell v Thomas*, 73 AD3d 103 [2d Dept 2010]).

The majority asserts that to deny relief to defendant would be unnecessarily carving out an exception to *Peque*. I disagree. This is simply an acknowledgment that a defendant should not be allowed to benefit from his own unlawful conduct.

Arguably the majority's position encourages defendants to abscond whenever possible. Not only would there be no penalty for absconding, defendants, if caught, would reap the benefits of changes in the law while on the lam without any consequences for their actions. Here, the defendant, who absconded from parole for a period of over seven years, used another name and was then rearrested for a new, unrelated offense, would be rewarded with the retroactive application of the *Peque* ruling, resulting in the vacatur of his plea, an untenable result. An absconder from the law should not reap the benefit of recent changes in the law; to do otherwise, would reward a defendant for his or her misconduct.

The majority's contention that a defendant who absconds still faces a parole violation fails to acknowledge the far more significant benefit to the defendant of the vacatur of the plea.

The majority's assertion that the People should have sought dismissal of the appeal while the defendant was absent, and if they had done so, then perhaps the motion would have been

granted is obviously speculative and more importantly continues to ignore the misconduct of the defendant. While the People did not move to dismiss the appeal or object to defendant's motion to perfect the appeal on the grounds that the defendant absconded, they clearly indicated that the defendant failed to appear. Further, that the defendant was allowed to perfect his appeal seven years later does not mean that the Court is obligated to grant the relief requested where the defendant, by his own actions, forfeited his right to such relief.

Clearly, given the significant passage of time since the 2001 offense and the attendant difficulties in locating witnesses and/or refreshing their memories, the People would be greatly prejudiced if defendant's plea were vacated pursuant to *Peque.*