[28 NYS3d 87]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v INSIK
SHIM, Appellant.

Second Department, March 16, 2016

**APPEARANCES OF COUNSEL**

*Lynn W.L. Fahey*, New York City (*Kathleen Whooley* of counsel), for appellant.

*Richard A. Brown*, *District Attorney*, Kew Gardens (*John M. Castellano*, *Johnnette Traill*, *Ellen C. Abbot* and *Jonathan V. Brewer* of counsel), for respondent.

**OPINION OF THE COURT**

LEVENTHAL, J.

In this proceeding pursuant to the Sex Offender Registration

Act (*see* Correction Law art 6-C [hereinafter SORA]), the defendant was designated a level two sex offender following a hearing. After filing a notice of appeal, the defendant, an undocumented immigrant from South Korea, was deported. On appeal, we address, among other things, the People's assertion that the defendant's deportation has rendered the appeal academic. This contention is a matter of first impression for our Court. For the reasons discussed below, we hold that the defendant's deportation does not render this appeal academic.

According to a case summary prepared by the Board of Examiners of Sex Offenders (hereinafter the Board), in May 2010, the defendant and the female victim resided together in the same residence, each renting a separate room. On May 30, 2010, the defendant and the victim were the only two individuals present at the premises. The victim was in the kitchen when the defendant approached her and stated that he wanted to set her up with someone. The victim declined, went to her bedroom, and closed the door. Minutes later, the defendant pushed his way into the victim's room, while holding a knife, and put the knife to the victim's throat. The defendant repeatedly punched the victim in the face. The victim managed to run to the front door and scream for help, but the defendant dragged her into his bedroom. The defendant threatened to kill the victim and repeatedly hit her in the face. The defendant ripped off the victim's clothes and put his mouth on her breasts and vagina. He attempted to put his penis into the victim's mouth and placed his penis in her vagina. The incident lasted several hours.

Eventually, the victim was able to flee the premises and call the police. According to the case summary, police reports indicated that when the police arrived on the scene the defendant's bedroom had blood "everywhere," including blood all over a pillow, a blanket, pajamas, a bra, two t-shirts, and a pair of green boxers. The knife was recovered from the victim's bed. The clothes that the defendant was wearing were identified by the victim, and were "covered in blood." The victim was taken to a hospital, and records indicated that her face was covered in bruises and dried blood, and was extremely swollen. The defendant admitted to the police that he had attempted to rape the victim, and he claimed that he did so because he had been drinking.

As a result of this incident, the defendant was indicted on several charges including rape in the first degree. The defend-

ant subsequently pleaded guilty to attempted rape in the first degree in full satisfaction of the indictment, and on November 29, 2010, he was sentenced to a determinate term of four years of imprisonment.

In anticipation of the defendant's impending release in the fall of 2013, the Board prepared a Risk Assessment Instrument (hereinafter RAI) assessing the defendant a total of 70 points, making him a presumptive level one sex offender. The Board recommended an upward departure to risk level two, and the People adopted the recommendation. During a SORA hearing conducted on September 23, 2013, the defendant's counsel argued that the People's application for an upward departure, which was based upon the violent nature of the defendant's conduct, should be denied because those factors were already taken into account by the SORA Guidelines (see Sex Offender Registration Act: Risk Assessment Guidelines and Commentary [2006] [hereinafter the SORA Guidelines]). The Supreme Court concluded that "based upon the extreme brutality and aggravating circumstances of the crime, and the egregiousness of the defendant's conduct," which were not taken into account by the SORA Guidelines, an upward departure to risk level two was warranted. It thereafter designated the defendant a level two sex offender. The defendant then filed a notice of appeal from the order designating him a level two offender. Shortly after the SORA determination, the defendant was released from prison. It is undisputed that upon the defendant's release, he was involuntary deported by the United States Immigration and Customs Enforcement Unit of the United States Department of Homeland Security (hereinafter ICE).

On appeal, the defendant's appellate counsel acknowledges that the defendant has been deported, but does not address any potential impact that the defendant's absence from New York may have upon his right to appellate review of the SORA determination. On the merits, the defendant argues that the Supreme Court erred in granting the People's application for an upward departure based upon the level of violence because he was already scored 30 points on the RAI for use of violence under risk factor 1. The People respond that the appeal should be dismissed because the defendant's deportation renders the appeal academic. In any event, the People argue that the extremely violent nature of the incident was an aggravating factor not taken into account by the SORA Guidelines, so an upward departure was warranted.

SORA contains community notification and disclosure provisions which allow law enforcement to notify the public about sex offenders (*see* Correction Law § 168-l [6]). A person who, as here, has been designated a level two sex offender is required to comply with annual registration and verification requirements for life (*see* Correction Law § 168-h). Although SORA does provide a mechanism for a level two sex offender to be relieved of such registration and verification obligations, that relief is not available until the individual has been registered for at least 30 years, and then only upon a finding that the offender's "risk of repeat offense and threat to public safety is such that registration or verification is no longer necessary" (Correction Law § 168-o [1]). Even if a sex offender were to relocate to another state, the offender would still be required to comply with the registration (*see* Correction Law § 168-c; *Matter of Doe v O'Donnell*, 86 AD3d 238 [2011]). Further, Correction Law § 168-q (1) provides that the New York State Division of Criminal Justice Services (hereinafter the Division) is required to maintain a subdirectory of level two and three sex offenders, "available at all times on the internet," which shall include a sex offender's name, address, photograph, conviction, and other information.

The People assert that because the defendant has been deported, the issues of whether the public needs to be protected and the defendant needs to register are now academic. " '[T]he doctrine of mootness is invoked where a change in circumstances prevents a court from rendering a decision that would effectively determine an actual controversy' " (*Matter of Citineighbors Coalition of Historic Carnegie Hill v New York City Landmarks Preserv. Commn.*, 2 NY3d 727, 728-729 [2004], quoting *Matter of Dreikausen v Zoning Bd. of Appeals of City of Long Beach*, 98 NY2d 165, 172 [2002]). An action or appeal will be dismissed as academic "unless the rights of the parties will be directly affected by the determination of the [action or] appeal and the interest of the parties is an immediate consequence of the judgment" (*Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]).

We note that the Appellate Division, First Department, has previously rejected arguments that a defendant's appeal challenging a SORA designation should be dismissed when a defendant has been deported (*see People v Edwards*, 117 AD3d 418 [2014]; *People v Gudino-Sanchez*, 116 AD3d 565 [2014]; *People v Scott*, 113 AD3d 491 [2014]). The First Department

has reasoned that the fugitive disentitlement doctrine, which permits dismissal of civil appeals where a party evades the law while seeking its protection, does not apply in SORA cases where the defendant has been involuntarily deported (*see People v Edwards*, 117 AD3d 418 [2014]). Moreover, the First Department noted in those cases that the People had not established that the defendant's absence from the country rendered the appeal academic (*see People v Edwards*, 117 AD3d at 419; *People v Gudino-Sanchez*, 116 AD3d at 566; *People v Scott*, 113 AD3d at 492; *see also People v Gudino*, 134 AD3d 468 [2015]). For this Court, however, the issue of whether an appeal from an order designating a defendant a sex offender pursuant to SORA is rendered academic because such defendant has been deported is a matter of first impression.

The impact of a defendant's involuntary deportation during the pendency of an appeal in a criminal proceeding has been addressed by the Court of Appeals, which has drawn a distinction between a criminal defendant's statutory right to intermediate appellate review, and the limited right of review by permission in the Court Appeals. In *People v Diaz* (7 NY3d 831 [2006]), the Court of Appeals granted a criminal defendant leave to appeal from an order of the Appellate Division, First Department, affirming his judgment of conviction. The Court of Appeals thereafter dismissed the defendant's appeal in the exercise of its discretion on the ground that the defendant had been involuntarily deported and, thus, was unavailable to obey the mandate of the Court. The Court's dismissal was without prejudice to the defendant's right to move to reinstate the appeal should he return to the Court's jurisdiction.

However, in *People v Ventura* (17 NY3d 675 [2011]), the Court of Appeals subsequently found that this Court had abused its discretion in dismissing two direct criminal appeals on the ground that the defendants were involuntarily deported by ICE while their appeals were pending, and were thus unavailable to obey the mandate of the court. Noting that courts had, in the past, dismissed appeals by physically-absent defendants because they had voluntarily absconded and forfeited their right to appeal, the Court explained that such dismissals had been "predicated primarily on a policy-based rationale that courts should not aid in the deliberate evasion of justice through continued consideration of appeals" (*id.* at 679-680). In the two cases before it, however, the Court of Appeals held that such policy should not have been invoked, as the defendants

were involuntarily removed from the country and their extrications "lacked the scornful or contemptuous traits that compel courts to dismiss appeals filed by those who elude criminal proceedings" (*id.* at 680). The Court also distinguished dismissal of an appeal by an intermediate appellate court from its dismissal of appeals in cases such as *Diaz*, by pointing out that in the cases it had dismissed the defendants "had already received considered intermediate appellate review, in satisfaction of their statutory right" (*id.* at 680). The Court added that while it had discretion, as a court of permissive appellate jurisdiction, to dismiss appeals where a defendant had been involuntarily deported, "the Appellate Divisions do not enjoy such unencumbered latitude. The invariable importance of the fundamental right to an appeal, as well as the distinct role assumed by the Appellate Divisions within New York's hierarchy of appellate review makes access to intermediate appellate courts imperative" (*id.* at 680-681 [citations omitted]). The Court also noted that the perceived inability to obey the mandate of the court was not implicated because disposition of the issues that the defendants were raising on appeal would result in either an affirmance or the outright dismissal of the indictments (*id.* at 682), without the possibility of a retrial which would require the continued legal participation of the defendants.

More recently, in *People v Harrison* (115 AD3d 980 [2014], *lv granted* 24 NY3d 1084), this Court granted the People's motion to dismiss an appeal on the ground that the defendant had been deported, where the defendant was appealing by permission from an order denying his motion pursuant to CPL 440.10 to vacate a judgment of conviction. This Court distinguished the case from *Ventura*, noting that: (1) the defendant was not directly appealing from his judgment of conviction as of right pursuant to CPL 450.10 (1), but was appealing by permission; and (2) if the defendant's motion were granted and his plea of guilty vacated, his continued participation in the proceeding would be required. Considering those circumstances, this Court deemed it appropriate to grant the People's motion to dismiss the appeal, without prejudice to a motion to reinstate the appeal should the defendant return to this Court's jurisdiction. Thus, unlike *Ventura*, where the Court of Appeals reversed orders which dismissed, with prejudice, direct appeals taken as of right from judgments of conviction, in *Harrison*, this Court dismissed an appeal taken pursuant to the Court's permissive

appellate jurisdiction, and did not preclude the defendant's further pursuit of the appeal should he return to this Court's jurisdiction.

██ In the instant case, the defendant was involuntarily deported based upon his underlying conviction. Here, as in *Harrison*, the defendant is not directly appealing from a judgment of conviction pursuant to CPL 450.10. Rather, the defendant is appealing from the order designating him a level two sex offender pursuant to SORA. As the People correctly assert, a SORA proceeding is "civil in nature" (*People v Mingo*, 12 NY3d 563, 571 [2009]; *see People v Wyatt*, 89 AD3d 112, 117 [2011]). Considering, however, that a "SORA determination undeniably has a profound impact on a defendant's liberty interest due to the registration and community notification provisions," defendants in SORA proceedings are afforded certain due process rights (*People v Brooks*, 308 AD2d 99, 105 [2003]; *see People v Gutierrez-Lucero*, 103 AD3d 89, 98 [2012]; *People v Bowles*, 89 AD3d 171, 179 [2011]; *Doe v Pataki*, 3 F Supp 2d 456, 471-473 [SD NY 1998]), including the right to appeal (*see* Correction Law § 168-d [3] [providing the parties the right to appeal from the order pursuant to articles 55, 56 and 57 of the CPLR]).

There are similarities to *Ventura* (17 NY3d at 680) that militate against dismissing the defendant's appeal without prejudice to his right to make a motion for reinstatement, as we did in *Harrison*. Since the defendant's arguments on this appeal are limited to the granting of the People's application for an upward departure, the disposition of this appeal would only result in an affirmance or a reversal of the order designating the defendant a level two sex offender. Thus, here, as in *Ventura* (*id.* at 682), the outcome of this appeal would not require the continued legal participation of the defendant. In addition, since the defendant was involuntarily removed from the country through deportation, our consideration of his appeal would not implicate the public policy against aiding a defendant who is deliberatively evading justice (*id.* at 679-680).

Furthermore, the People have failed to demonstrate that the defendant's involuntary absence from New York renders review of the order designating him a level two offender academic. As a result of his level two designation, the defendant's name, photograph, the details of his crime, and other information can be accessed online at the Division website, notwithstanding the fact that he has been deported (*see* New York State Division of Criminal Justice Services, http://www.criminaljustice.ny.gov

[accessed Sept. 10, 2015]; *see also* Correction Law § 168-q [1]). The outcome of an appeal such as this, which concerns a defendant's risk level designation, will have certain practical consequences with respect to SORA registration requirements, such as the duration of the posting of this information, which is already on the website (*see* Correction Law § 168-h).

For the foregoing reasons, we conclude that the appeal should not be dismissed on the ground that the defendant has been deported. We now address the defendant's contentions regarding the granting of the People's application for an upward departure.

"A court may exercise its discretion and depart upward from the presumptive risk level where 'it concludes that there exists an aggravating . . . factor of a kind, or to a degree, that is otherwise not adequately taken into account by the [SORA] Guidelines' " (*People v Richardson*, 101 AD3d 837, 838 [2012], quoting SORA Guidelines at 4). The aggravating factor "must tend to establish a higher likelihood of reoffense or danger to the community," and "the People must prove the facts in support of the aggravating factor by clear and convincing evidence" (*People v Wyatt*, 89 AD3d at 123; *see* Correction Law § 168-n [3]).

■ The Supreme Court did not improvidently exercise its discretion in granting the People's application for an upward departure. The record demonstrates that the defendant's underlying sex offense was particularly violent and of a prolonged nature. Contrary to the defendant's contention, the People provided clear and convincing evidence of an aggravating factor that was not adequately taken into account by the SORA Guidelines (*see People v Sorto*, 124 AD3d 744 [2015]). Case law provides that the heinous and violent nature of an underlying sex offense may justify an upward departure, where it is not adequately taken into account by the SORA Guidelines (*see People v Maldonado*, 127 AD3d 714, 715 [2015] [upward departure warranted considering "the brutal and severe nature of the defendant's conduct toward the complainant"]; *People v Kotler*, 123 AD3d 992, 993 [2014] [upward departure to level three warranted where "the defendant impersonat(ed) a police officer in order to deceive the victim into stopping her car whereupon he then kidnapped her at knife point, threatened to kill her, drove her to a remote wooded location where he raped her, and thereafter attempted to destroy the physical evidence of his crime"]; *People v Simmons*, 121 AD3d 465, 466 [2014]

[upward departure was warranted, "particularly in light of the heinous nature of the underlying crime"]; *People v Guasp*, 95 AD3d 608, 608 [2012] [regardless of whether the defendant was assessed 55 or 70 points, upward departure to level two was warranted because "the risk assessment instrument failed to adequately take into account the crime's unusual brutality and heinous quality"]; *People v Henry*, 91 AD3d 927, 927 [2012] [upward departure to level three warranted because of facts showing "the defendant and another man kidnapping the victim at gunpoint, handcuffing her, and driving her for hours to a remote location where they took turns raping her before holding her for hours longer in captivity until she jumped into a river to escape"]; *People v Miller*, 48 AD3d 774, 775 [2008] [upward departure to level three warranted where defendant and another man abducted a woman from the street and brought her, at gunpoint, to the defendant's basement where they took the victim's property and repeatedly raped and sodomized her]).

While the SORA Guidelines do take into account the use of violence under risk factor 1, the People's proof demonstrated, by clear and convincing evidence, that the SORA Guidelines did not adequately take into account the true nature of the defendant's actions, and that the defendant's conduct tended to show a higher likelihood of reoffense or danger to the community. The case summary indicates that the defendant repeatedly punched the victim in the face, placed a knife to her throat, threatened to kill her, put his mouth on her breasts and vagina, attempted to place his penis in her mouth, and put his penis in her vagina against her will. Following the incident, which lasted several hours, the police recovered various items within the subject residence that were covered in blood, and the victim's face was both bruised and bloody.

Thus, the defendant was properly designated a level two sex offender. Accordingly, the order is affirmed.

MASTRO, J.P., MALTESE and DUFFY, JJ., concur.

Ordered that the order is affirmed, without costs or disbursements.