People v Charles (2018 NY Slip Op 03864)





People v Charles


2018 NY Slip Op 03864


Decided on May 30, 2018


Appellate Division, Second Department


Rivera, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 30, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
LEONARD B. AUSTIN
ROBERT J. MILLER
BETSY BARROS, JJ.


2016-07020

[*1]People of State of New York, respondent,
v
Gerald Charles, appellant.



APPEAL by the defendant from an order of the Supreme Court (Deborah A. Dowling, J.), dated May 13, 2016, and entered in Kings County, which, after a hearing, denied his petition pursuant to Correction Law § 168-o(2) to modify his risk level classification under Correction Law article 6-C.



Paul Skip Laisure, New York, NY (Jenin Younes of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Anthea H. Bruffee, and Joyce Adolfsen of counsel), for respondent.



RIVERA, J.P.


OPINION & ORDER
The defendant, a level three sex offender required to register pursuant to the Sex Offender Registration Act (see Correction Law art 6-C; hereinafter SORA), petitioned pursuant to Correction Law § 168-o(2), to downwardly modify his sex offender risk level classification. The Supreme Court denied the defendant's petition, and he now appeals. The People urge this Court to dismiss the defendant's appeal on the ground that Correction Law § 168-o(2) does not provide for an "as of right" appeal from an order denying a petition for a downward modification. Upon considering this question, which is apparently one of first impression in this Court, we decline to dismiss the appeal. However, on the merits, we agree with the Supreme Court that the defendant failed to establish, by clear and convincing evidence, facts warranting a modification of his existing risk level.
I. Facts
On several occasions between 1993 and 1996, the defendant engaged in anal sexual contact with two different boys, both of whom were under the age of 11. He was charged under three separate indictments, inter alia, with various sodomy and sexual abuse charges. In 1997, the defendant pleaded guilty to sodomy in the first degree (two counts) and sexual abuse in the first degree, in full satisfaction of all three indictments. He was sentenced to concurrent indeterminate terms of imprisonment, and was released in 2004 at the maximum expiration of his sentences.
In 2004, prior to the defendant's release, a hearing was conducted pursuant to SORA. In anticipation thereof, the Board of Sex Examiners (hereinafter the Board) prepared a risk assessment instrument wherein the defendant was assessed a total of 135 points, which presumptively placed him in a level three category. The Board indicated that a departure from the risk level was not warranted.
At the SORA hearing, defense counsel indicated that, while the defendant was disputing his conviction of the subject crimes, he was "ready to accept the findings of a level three" sexually violent offender. The Supreme Court designated the defendant a level three sexually violent sex offender.
The Defendant's Petition Pursuant to Correction Law § 168-o(2)
By notice of petition dated October 29, 2015, the defendant petitioned pursuant to [*2]Correction Law § 168-o(2) to modify his SORA risk level.
In an affirmation also dated October 29, 2015, defense counsel argued that the defendant was "now inappropriately" assessed a level three offender based on the following three reasons:
"a. Having been adjudicated a level 3 sex offender in May 2004, [the defendant], a 71-year-old, ailing and disabled man with no subsequent criminal convictions, has been subject to SORA's most rigorous registration requirements for more than eleven years. Throughout this time, he has diligently complied with the requirement that he personally verify his address every 90 calendar days with the local law enforcement agency. Correction Law § 168-f(3), 168-h(3). [The defendant] has committed no crimes since those at issue in this case, which occurred about 20 years ago when he was a much younger man in his early fifties;
"b. Since his release from prison in 2004, [the defendant] has sought to rebuild a stable and law-abiding life. He has lived in the same residence for 11 years and has had no further contact with the criminal justice system. Following his release from prison, [the defendant] has sought to improve his employment opportunities and completed a career development workshop. Unfortunately, he has been unable to work due to his poor health.
"c. [The defendant] walks with a cane and suffers from severe back pain, heart problems, and type 2 diabetes. Given his current age and physical condition, he poses a significantly reduced risk of sexual reoffense from the time of his SORA hearing 11 years ago.
Accordingly, his risk level should be modified to level one or, in the alternative, level two."
In sum, counsel argued that all of those factors warranted a modification of his risk level to properly reflect his reduced risk of sexual reoffense. Counsel referred to certain "studies" that purported to show that the longer an individual remains offense-free in the community, the less likely he was to "sexually recidivate," and that "a sex offender's risk of recidivism drops significantly with increased age" (internal quotation marks and citations omitted).
The Update of the Board of Examiners of Sex Offenders
The Supreme Court requested that the Board provide an updated recommendation regarding the defendant's risk level. In a letter dated November 25, 2015, the Board stated, inter alia:
"Please be advised that pursuant to Correction Law 168-o(2) The petition shall set forth the level of notification sought, together with the reasons for seeking such determination. The offender shall bear the burden of providing facts supporting the requested modification by clear and convincing evidence.' When preparing updated reports in response to Petitions for Modification, the Board does not rescore the original Risk Assessment Instrument. Rather, the Board examines what has changed in an offender's life since the risk level was established, which may affect his/her risk to reoffend.
"In [the defendant's] petition, his attorney, Ms. Younes, writes that [the defendant's] level should be reduced because at the present time, being a Level 3 and a 71 year old ailing and disabled man with no subsequent criminal convictions, he has been subject to SORA's most rigorous registration requirements for more than 11 years, but he has complied with his registration requirements. She also writes that [the [*3]defendant] is still living in the same residence for 11 years and has sought to improve his employment opportunities by completing a career development workshop; however, he is unable to work due to his health. Given his age and physical condition, Ms. Younes writes that [the defendant] poses a significantly reduced risk of sexual re-offense since his SORA hearing. A certificate of completion was submitted from the career development workshop. Also submitted was medical information regarding [the defendant's] health concerns.
"The Board notes that no information regarding any sex offender treatment [the defendant] may have completed in the community was submitted. As previously noted, [the defendant] was released from DOCCS at his maximum expiration of his sentence predicated upon his refusal to participate in sex offender treatment. At the very least, there was no recent sex offender evaluation completed by a professional provider submitted that would indicate what [the defendant's] assessed risk is at this time to the community. Additionally absent were any letters of support from family members or members of the community in support of a level reduction for [the defendant]. Most concerning was the absence of any admission on [the defendant's] part of any admission of guilt or remorse for subjecting his victims to sexual abuse, or any insight to why, at the age of 53, he committed these crimes. It appears the only thing that has changed is the fact that [the defendant] is now older and continues to have more health issues.
"The Board does recognize that [the defendant] has been in compliance with his sex offender registration requirements, and he does not have any known new arrests or convictions for any additional crimes since his conviction for the instant offense. He is commended for attempting to re-enter the workforce by completing a career development workshop; however, it is noted that his health issues preclude him from doing so. Without any meaningful acknowledgment of responsibility for the instant offense and any expression of remorse for his victims coupled with a lack of sex offender treatment or evaluation, [the defendant] remains a high risk for the community. At this juncture, the Board cannot recommend a lowered risk level.
"For the above stated reasons, the Board is not recommending a reduction in [the defendant's] level at this time."
The Hearing Regarding the Defendant's Petition to Modify His Risk Level Pursuant to Correction Law § 168-o(2)
A hearing was conducted on March 18, 2016, regarding the defendant's petition to modify his risk level pursuant to Correction Law § 168-o(2). At the commencement of this hearing, defense counsel provided the court with copies of the studies she referenced in her affirmation, as well as certain "letters of support." Counsel argued that the defendant's designation at the "highest level" no longer reflected his "actual risk." She reiterated that the defendant had been out of prison for 12 years; had no further contact with the criminal justice system; had complied with the SORA requirements; the offenses occurred 20 years ago; he was now in his early 70s; he was living a stable, law-abiding life; and suffered from "significant health problems." Thus, she contended that the risk level should be modified to a level one or, in the alternative, a level two.
The People countered that the defendant had failed to meet his "clear and convincing" burden of providing facts in support of his modification petition. Specifically, the People asserted that the defendant had refused to participate in a sex offender treatment program while incarcerated and no information about a subsequent sex offender treatment program had been submitted. The [*4]People added that there was no "recent" sex offender evaluation and therefore, the defendant had "never engaged in any treatment program whatsoever." The People indicated that there were no letters from any family members in support of the subject petition and the career development workshop materials were from 2004, "a number of years ago." The People argued that the defendant had expressed no guilt, remorse, or "any insight" as to why he committed these crimes. In fact, according to the People, the defendant did not acknowledge responsibility for the crimes. The People maintained, "[t]he fact that the defendant is older and has health issues does not mitigate his risk level to the community because the defendant never did any sex-offender treatment whatsoever." Further, the People noted that the defendant was in his 50s when he committed the subject crimes, which the People described as "all very serious." Thus, the People asserted that the defendant should continue to be assessed a level three sex offender. The People asked that the Board's letter be considered by the Supreme Court.
In response, defense counsel indicated that the defendant "did take sex offender counseling in prison, but he was released prior to being able to complete it." The defendant could not remember when he started the counseling, but it was "around 20 years ago." The Supreme Court noted, "certainly, he was incarcerated a number of years. Is there any reason he waited then to enroll in a Sex Offender Treatment Program, counsel?" Defense counsel replied, "I'm not sure, your Honor, but I do know that [the defendant] is trying his best to lead a law-abiding life and he's been successful for the last 12 years." The People noted that, in the Board's letter, the Board stated that the defendant was released at the maximum expiration of his sentence "predicated upon his refusal to participate in sex-offender treatment."
The Supreme Court's Order on Appeal
In an order dated May 13, 2016, the Supreme Court denied the defendant's petition in its entirety. In relevant part, the court found:
"While it is commendable that the defendant has not incurred any subsequent arrest since his release back into the community[,] that does not justify a downward departure of SORA. Likewise, the fact that the defendant is now 71 years of age and purportedly suffering from significant health issues (the defendant's own assessment of his health condition) does not mean that he should automatically be granted a downward departure of his SORA.
"Like the NYS Board of Examiners, this Court is extremely concerned that the defendant never participated in and/or completed any Sexual Offender Treatment Programs during the maximum expiration of his sentence. I do not find the presentation that the defendant was participating in such a program but was unable to complete the program because of his release from prison to be credible or persuasive. The defendant's conduct and behavior of consistently denying culpability of his actions over the course of the years is also noteworthy and would serve as a basis for his failure to participate in a Sex Offender Treatment Program, while incarcerated.
"Based upon all of the proceedings had before this Court, the defendant fails to prove by clear and convincing evidence that he is entitled to the relief sought. Accordingly, the defendant's motion is denied in its entirety. The SORA designation adjudicated by the Court on May 25, 2004 shall remain in force and in effect."
II. Legal Analysis
On appeal, the defendant argues that the Supreme Court "abused its discretion" when it refused to modify his registration notification level in light of the fact that he was (1) a 71 year-old man, (2) at liberty for more than a decade without committing any additional crimes, (3) in compliance with his registration requirements, and (4) in ailing and poor health.
The People counter that the instant appeal should be dismissed because there is no "as of right" appeal from an order denying a petition for a downward modification under Correction Law § 168-o(2). In any event, they assert that the Supreme Court providently exercised its discretion [*5]in denying the defendant's petition. In that regard, they contend that the defendant failed to prove, by clear and convincing evidence, that a modification of his sex offender risk level was warranted.
In reply, the defendant argues that he is entitled to an appeal. He notes that all four Appellate Division Departments have reached the merits of appeals from orders denying petitions under Correction Law § 168-o(2), an "implicit determination that defendants may appeal denials of these petitions." He adds that, assuming arguendo, the People's interpretation of the Correction Law is correct, he is still entitled to appeal under CPLR 5701. He urges this Court to reverse for the reasons stated in his main brief.
The Appealability of a Denial under Correction Law § 168-o(2)
In order to fully address whether the instant appeal may be taken to this Court "as of right," a discussion regarding the relevant history of Correction Law § 168-o(2) is necessary.
SORA was passed on July 25, 1995, and became effective on January 21, 1996 (see Doe v Pataki, 120 F3d 1263, 1266 [2d Cir]). It requires individuals convicted of certain listed sex offenses to register with law enforcement officials, and it authorizes those officials, in some instances, to notify the public of, or provide the public with access to, the identity, whereabouts, and backgrounds of those individuals.
In 1996 neither Correction Law § 168-n, which governs the procedure for the initial judicial determination of a sex offender's risk level upon release from incarceration (see People v Wyatt, 89 AD3d 112, 117), nor Correction Law § 168-o, which enabled a sex offender to petition the sentencing court for relief from further duty to register, provided for any right to appeal.
Specifically, in 1996, Correction Law § 168-o(2) provided:
"Any sex offender required to register pursuant to this article may be relieved of any further duty to register upon the granting of a petition for relief by the sentencing court. Upon receipt of the petition for relief, the court shall notify the board and request an updated report pertaining to the sex offender. After receiving the report from the board, the court may grant or deny the relief sought. The court may consult with the victim prior to making a determination on the petition. Such petition, if granted, shall not relieve the petitioner of the duty to register pursuant to this article upon conviction of any offense requiring registration in the future."
In 1996, certain sex offender plaintiffs challenged SORA on constitutional and statutory grounds (see Doe v Pataki, 919 F Supp 691 [SD NY]). By decision and order dated March 21, 1996, the United States District Court for the Southern District of New York held that the public notification provision of SORA constituted punitive, not regulatory, measures (see id. at 700-701). Thus, that court determined that the application of these measures to individuals who committed their crimes before SORA was passed violated the Ex Post Facto Clause of the United States Constitution (see id. at 701). The court then preliminarily enjoined the enforcement of the public notification provisions of SORA (see id. at 702).
In 1997, the United States Court of Appeals for the Second Circuit held that neither the registration nor the notification provisions of SORA inflicted "punishment" under the Ex Post Facto Clause (Doe v Pataki, 120 F3d at 1265). It remanded the matter to the Southern District.
Upon remand, the Southern District considered the question of what procedural due process protections were required in the context of SORA. That court held, among other things, that community notification of convicted sex offenders implicated a protected liberty interest, and this entitled the offenders to procedural due process (see Doe v Pataki, 3 F Supp 2d 456, 468 [SD NY]). The court then discussed the procedures required to satisfy due process, as follows: (1) a hearing; (2) notice of the classification proceeding; (3) a statement of the proceeding's purpose and the Board's recommended risk level classification; (4) a right to representation by counsel; (5) pre-hearing discovery of the evidence on which the Board's risk level recommendation is based; (6) a burden on the state to prove the facts supporting each risk factor upon which the risk level assessment is based by clear and convincing evidence; and (7) a right to appeal his risk level determination (see id. at 471-472).
As particularly relevant herein, the Southern District also stated:
"Defendants acknowledge that the Act fails to provide explicitly for [*6]direct appeal of a risk assessment determination, but they contend that convicted sex offenders have alternative means through which to seek review of their risk level classifications. Risk level determinations, they argue, are appealable under CPLR § 5701 or in an Article 78 proceeding. The First Department, however, has held otherwise, concluding that no appeal lies at all. [People v. Rodriguez, 240 AD2d 351,] 660 N.Y.S. 2d 714. In fact, plaintiffs present evidence that the First Department has refused, since its decision, even to accept notices of appeal from convicted sex offenders challenging their risk level determinations.
"The Act's failure to provide explicitly for an avenue for appeal of risk level determinations is the one alleged procedural deficiency common to all members of the Proposed Additional class. This deficiency alone would satisfy the likelihood of success on the merits test because the absence of a review provision effectively forecloses the possibility of any meaningful review of any constitutional claims convicted sex offenders may have with respect to their risk level determinations, a prospect that offends the very notion of fundamental fairness embodied in the concept of procedural due process.
"Nor are defendants correct in asserting that an avenue for appeal exists through Article 78 of the CPLR. Article 78 provides that a proceeding under this article shall not be used to challenge a determination which was made in a civil action or criminal matter.' N.Y. Civ. Prac. L. & R. § 7801 (McKinney 1994). Hence, Article 78 provides for judicial review of administrative action, and does not generally permit review of judicial action, except in certain narrow circumstances. Those narrow circumstances, however, only include an action for mandamus to compel a court's performance or nonperformance of a ministerial or clerical act, see Green v. Ingrassia, 665 N.Y.S.2d 577, 577 (2d Dep't 1997), or a prohibition action to restrain a judicial officer from acting without jurisdiction or in excess of jurisdiction. See Town of Huntington v. New York State Div. of Human Rights, 82 N.Y.2d 783, 604 N.Y.S.2d 541, 542-43, 624 N.E.2d 678 (Ct.App.1993). Neither circumstance would cover a convicted sex offender's appeal of his risk level determination. Thus, no means appear to exist by which an offender can raise constitutional challenges to his risk level determination under New York State law. The lack of any provision for review of risk level determinations effectively denies convicted sex offenders the opportunity to fully and fairly litigate their claims of due process violations at their risk level classification hearings" (id. at 476-477 [citation omitted]).
In 1999, Correction Law §§ 168-n and 168-o were amended (see L 1999, ch 453). According to the "Budget Report on Bills" prepared by the Senate sponsor, the purpose of the amendment, inter alia, was "to bring the State into compliance with Federal sex offender laws and requirements" and to "avoid a Federal funding penalty associated with non-compliance" (Senate Introducer's Mem, Bill Jacket, 1999, SB 6100, ch 453). The bill passed both houses of the legislature.
In a Memorandum to James M. McGuire, Counsel to the Governor, dated September 1, 1996, Kathy A. Bennett, Chief, Legislative Bureau of the Office of the Attorney General, indicated:
"This bill would amend Chapter 192 of the Laws of 1995, the Sex Offenders Registration Act, also known as Megan's Law.' Although [*7]that law has always provided the right to a hearing for those who must register as sex offenders, uniform due process procedures governing the determination of duration of registration and level of notification were not prescribed. This bill details such procedures and clarifies that appeal by either party is as of right under Articles 55, 56 and 57 of the C.P.L.R.
"These amendments to Megan's Law are essential to a complete and effective implementation of the statute. Since May of 1998, an injunction has limited the dissemination of information via the 900 phone line and has curtailed affirmative notification by law enforcement agencies. The injunction was issued as a result of due process claims raised by the plaintiffs in Doe v. Pataki, et al. The amendments made in this bill address the concerns set forth in the Federal District Court decision by explicitly providing the procedures for the risk assessment determinations conducted in state court. These provisions are the result of negotiations among the parties in the federal litigation, including the Office of the Attorney General, and enactment of this bill should avoid additional due process challenges.
"For the above reasons we respectfully request approval of this measure" (Letter from Off. of Atty Gen., Sept. 1, 1999, Bill Jacket, 1999 SB 610, ch 453).
Similarly, in a letter dated August 18, 1999, from Kenneth J. Connolly, the Deputy Commissioner and Counsel of the Division of Criminal Justice Services, to James M. McGuire, Connolly stated that "[t]hese amendments are necessary to ensure that New York State law complies with federal requirements relating to sex offender registration" (Letter from Div of Crim Just Servs, Aug. 18, 1999, Bill Jacket, 1999 SB 6100, ch 453). Connolly further stated that "[t]he absence of an appeal mechanism in the current law also has been held to violate due process" (id.). He noted "[t]his bill cures those deficiencies by establishing a clearly defined procedure to provide offenders with notice, an opportunity to be heard, codifies the right, by either party, to appeal from a risk level determination and provides for the assignment of counsel for offenders who are unable to afford an attorney" (id.).
As amended, Correction Law § 168-n(3), which applies to the initial SORA determination, now provides that "[e]ither party may appeal as of right from the order pursuant to the provisions of articles fifty-five, fifty-six and fifty-seven of the civil practice law and rules" (emphasis added). Significantly, with the 1999 amendments, Correction Law § 168-o(2), which applies to modification petitions, now states "[i]n the event that the sex offender's petition to modify the level of notification is granted, the district attorney may appeal as of right from the order pursuant to the provisions of articles fifty-five, fifty-six and fifty-seven of the civil practice law and rules" (emphasis added).
" [T]he clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof'" (People v Pabon, 28 NY3d 147, 152, quoting People v Golo, 26 NY3d 358, 361). As correctly stated by the People on this appeal, by its plain language, Correction Law § 168-o(2) does not provide for the sex offender to have an "as of right" appeal from an order denying the petition. In their brief, the People suggest that the reason "might well be" that the parties were already entitled to "as of right" appeals after the initial SORA hearing, and a denial of a modification petition would simply maintain the "status quo" in terms of an offender's risk level. They also note that a sex offender may bring a new petition for modification each year. In his reply brief, the defendant asserts that, even assuming that the People's interpretation of Correction Law § 168-o(2) is correct, he is still entitled to appeal the denial of his modification petition pursuant to CPLR 5701. We agree with the defendant.
"CPLR 5701 is the main statutory source of the jurisdiction of the appellate division. It determines what is appealable" (Richard C. Reilly, Practice Commentaries, McKinney's Cons [*8]Laws of NY, Book 7B, CPLR C5701:1). Appealability to the appellate division, as opposed to the Court of Appeals (see CPLR art 56), is very broad. Correction Law § 168-o(2) provides that an appeal may be taken by the district attorney "as of right" from an order granting a sex offender's petition to modify the level of notification. It then continues that "[w]here counsel has been assigned to represent the sex offender upon the ground that the sex offender is financially unable to retain counsel, that assignment shall be continued throughout the pendency of the appeal, and the person may appeal as a poor person pursuant to article eighteen-B of the county law" (Correction Law § 168-o[2]).
Contrary to the People's contention, Correction Law § 168-o(2) does not diminish, detract, or disturb this Court's jurisdiction to consider the instant appeal under CPLR 5701(a). Pursuant to CPLR 5701(a)(2)(v), "[a]n appeal may be taken to the appellate division as of right in an action, originating in the supreme court or a county court: . . . from an order . . . where the motion it decided was made upon notice and it . . . affects a substantial right." We will not read Correction Law § 168-o(2) as curtailing this Court's jurisdiction to entertain an appeal under CPLR 5701(a), especially where, as here, there are serious due process implications. Indeed, we have recognized that SORA " undeniably has a profound impact on a defendant's liberty interest due to the registration and community notification provisions'" (People v Gutierrez-Lucero, 103 AD3d 89, 98, quoting People v Brooks, 308 AD2d 99, 105; see People v Shim, 139 AD3d 68, 75; Doe v Pataki, 3 F Supp 2d at 466-468).
We note that this Court and its three sister Appellate Division Departments have all decided, on the merits, multiple appeals taken from orders denying petitions pursuant to Correction Law § 168-o(2) (see e.g. People v Smith, 154 AD3d 890 [2d Dept]; People v Lopez, 154 AD3d 531 [1st Dept]; People v Garcia, 145 AD3d 640 [1st Dept]; People v Hayden, 144 AD3d 1010 [2d Dept]; People v Palladino, 137 AD3d 1098 [2d Dept]; People v Lesch, 126 AD3d 1261 [3d Dept]; People v Runko, 105 AD3d 927 [2d Dept]; People v Grossman, 85 AD3d 1632 [4th Dept]). The defendant argues that this reflects an "implicit" determination by each Appellate Division Department that defendants may appeal from the denials of these petitions. The People counter that no Appellate Division Department had been asked to consider, and thus, did not decide, whether an "as of right" appeal lies from such an order.
In People v Tilley (138 AD3d 547), the First Department stated, "[a]ssuming without deciding that the order is appealable, we find that the court properly exercised its discretion in denying any modification of [the] defendant's level three classification" (id. at 548).
In People v Willis (130 AD3d 1470), the defendant commenced a proceeding pursuant to Correction Law § 168-o in City Court. He then took an appeal from that order in County Court. The County Court affirmed the City Court's order. He then took an appeal to the Appellate Division, Fourth Department, which stated:
"[W]e note that [a]n appeal may be taken to the appellate division as of right from an order of a county court . . . which determines an appeal from a judgment of a lower court (CPLR 5703[b]), and here County Court determined the appeal from an order of City Court, not a judgment. Nevertheless, where[,] [as here,] the rights of the parties are for all practical purposes finally determined,' we conclude that this appeal as of right pursuant to CPLR 5703(b) is properly before us" (People v Willis, 130 AD3d at 1471, quoting Highlands Ins. Co. v Maddena Constr. Co., 109 AD2d 1071, 1072).
In the case of People v Lashway (25 NY3d 478), the Court of Appeals was presented with the issue of whether the County Court abused its discretion when it denied the defendant's request for an adjournment of his reclassification hearing under Correction Law § 168-o. The Court of Appeals stated that "[w]here the hearing court's findings, expressly made under the proper evidentiary standard, are affirmed by the Appellate Division, this Court's review is limited to whether the decisions below are affected by an error of law or are otherwise not supported by the record" (People v Lashway, 25 NY3d at 483). The Court of Appeals then concluded that the County Court had not abused its discretion and affirmed the order of the Appellate Division. Although it never addressed the issue of the defendant's right to take an appeal to the Appellate Division, the Court of Appeals considered the merits of the issues on that appeal.
As indicated herein, nothing in the language of Correction Law § 168-o(2) precludes [*9]this Court's exercise of its broad authority and jurisdiction to entertain and decide the instant appeal. In the context of SORA, we have long recognized the significant impact upon the defendant's liberty interest. Furthermore, we are cognizant of the ongoing responsibility and crucial importance in maintaining a balance between the procedural safeguards afforded to the defendant and the societal interests involved in protecting "the public from sex offenders" (People v Francis, _____ NY3d _____ , _____, 2018 NY Slip Op 01017, *3 [2018]). Based on the foregoing, we hold that a sex offender may appeal from an order denying a petition for a downward modification of his risk level. We decline the People's urging to close the doors of this Court to such appeals.
The Merits of the Defendant's Petition
However, for the reasons now discussed, on the merits, the Supreme Court properly denied the defendant's petition.
As indicated, Correction Law § 168-o(2) permits a sex offender required to register pursuant to SORA to petition annually for modification of his risk level classification (see People v Lashway, 25 NY3d at 483; People v Palladino, 137 AD3d at 1099; People v Wyatt, 89 AD3d at 125). "The petitioner [herein the defendant] bears the burden of proving the facts supporting a requested modification by clear and convincing evidence" (People v Lashway, 25 NY3d at 483; see Correction Law § 168-o[2]; People v Wyatt, 89 AD3d at 125).
Here, the defendant failed to establish, by clear and convincing evidence, facts warranting a modification of his existing risk level classification (see People v Hayden, 144 AD3d at 1010-1011; People v Palladino, 137 AD3d at 1099). The fact that the defendant is in his 70s, without more, does not constitute clear and convincing evidence to warrant a modification, especially since the defendant committed the instant sexual offenses when he was already in his 50s. Similarly, although the defendant claims to be in poor physical health, in support thereof, he produced: (1) a 2011 MRI report, in effect, showing a small left posterolateral disc herniation at the L1-L2 disc space and disc bulges at the L3-L4 and L4-L5 disc spaces, and (2) a "Discharge Summary" from New York Methodist Hospital apparently related to a cardiac catherization. This purported evidence does not suffice to show, by clear and convincing evidence, facts warranting a modification. The defendant has failed to show, by clear and convincing evidence, that his poor physical health renders him less likely to commit a sex crime in the future. Finally, the fact that he has purportedly not committed any additional sex crimes and has been compliant in his registration requirements under SORA, while commendable, are outweighed by the extreme seriousness and nature of the underlying sex crimes (see People v Johnson, 124 AD3d 495, 496). Indeed, as noted by the Board and the Supreme Court, it is of concern that the defendant has never completed a sex offender treatment program and has refused to accept responsibility for his sexual offenses.
Accordingly, the Supreme Court properly denied the defendant's petition, and the order is affirmed.
AUSTIN, MILLER and BARROS, JJ., concur.
ORDERED that the order is affirmed, without costs or disbursements.
ENTER:
Aprilanne Agostino
Clerk of the Court