People v Rodriguez (2021 NY Slip Op 03475)





People v Rodriguez


2021 NY Slip Op 03475


Decided on June 2, 2021


Appellate Division, Second Department


Mastro, J.p., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 2, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
REINALDO E. RIVERA
MARK C. DILLON
ANGELA G. IANNACCI, JJ.


2018-08632

[*1]The People of the State of New York, respondent,
v
Bernabe Rodriguez, etc., appellant.



APPEAL by the defendant from an order of the Supreme Court (Susan Cacace, J.), entered May 24, 2018, in Westchester County, which, after a hearing, designated the defendant a level three sex offender pursuant to Correction Law article 6-C. Justices Dillon and Iannacci have been substituted for former Justices Balkin and Maltese (see 22 NYCRR 1250.1[b]).



Clare J. Degnan, White Plains, NY (Salvatore A. Gaetani of counsel), for appellant.
Miriam E. Rocah, District Attorney, White Plains, NY (Christine DiSalvo, Steven A. Bender, and William C. Milaccio of counsel), for respondent.



MASTRO, J.P.


OPINION & ORDER
In the present appeal, we are confronted with the question of whether the existence of a familial relationship between a sex offender and his or her victim, standing alone, provides an adequate basis under the Sex Offender Registration Act (Correction Law art 6-C; hereinafter SORA) to warrant an upward departure from the presumptive risk level for the offender as assessed by the Board of Examiners of Sex Offenders (hereinafter the Board). Upon our review of relevant decisions and the SORA: Risk Assessment Guidelines and Commentary (2006) (hereinafter Guidelines), we conclude that the mere existence of such a familial relationship, without more, does not constitute a valid basis for an upward departure, and we take this opportunity to clarify our case law in this area. We further determine that since the People presented clear and convincing evidence of additional and independent aggravating circumstances to justify the upward departure in this case, the order granting that departure should be affirmed.
Factual Background
By Westchester County Indictment No. 09-1587, the then 32-year-old appellant was charged with two counts of course of sexual conduct against a child in the first degree, rape in the first degree, criminal sexual act in the first degree, and four counts of endangering the welfare of a child. The charges arose from the appellant's commission of a series of horrific acts of sexual intercourse, oral sexual conduct, and anal sexual conduct between September 2005 and November 2009 against his stepdaughter, a child he had raised since the age of 5, and who was only 8 years old when the abuse began. The abuse finally ended when the child revealed the events to her mother. According to the victim's grand jury testimony and the bill of particulars prepared by the Westchester County District Attorney's Office, on at least one occasion in 2009, the appellant engaged in unprotected vaginal and anal intercourse with the victim in the presence of his three biological sons, who at the time were two, five, and seven years of age (three of the original counts of endangering the welfare of a child were related to this incident). Furthermore, in a statement to the authorities after his arrest, the appellant admitted that he had regularly engaged in vaginal and anal intercourse with the victim for years, and that he had never used a condom during those assaults.
Pursuant to a negotiated plea agreement, the appellant entered a plea of guilty in 2010 to a single count of course of sexual conduct against a child in the first degree in full satisfaction of the indictment and in exchange for a determinate term of imprisonment of 10 years, to be followed [*2]by 15 years of postrelease supervision. On March 15, 2018, in anticipation of the appellant's conditional release date, the Board prepared a Risk Assessment Instrument (hereinafter RAI) which assessed a total of 90 points against the appellant, classifying him as a presumptive level two sex offender. With respect to risk factor 7 of the RAI, entitled "Relationship with victim," the Board scored 0 points against the appellant, reflecting the Board's conclusion that said risk factor did not apply to him (see Guidelines at 3 n 5). The People subsequently served notice of their intention, inter alia, to seek an upward departure to a risk level three classification for the appellant.
At the ensuing SORA hearing held in the Supreme Court on May 22, 2018, the People provided detailed evidence of the sex offenses committed by the appellant against his young victim, but agreed with the Board's assessment of 0 points under the "Relationship with victim" risk factor. However, in seeking the upward departure, the People first cited "the familial relationship between the parties," claiming that the commission of sex offenses in the family setting is characterized by a "complete and gross abuse of trust" and "immeasurably greater feelings of hopelessness for the victim." The People went on to describe the heinous, callous, and escalating nature of the appellant's conduct, observing that the appellant even subjected the child to unprotected anal and vaginal intercourse in the presence of his three young sons, one of whom was actually lying on the same bed as the appellant and the victim during the sexual assault. As the Assistant District Attorney argued, "[the appellant] had no regard for any of these children." The appellant's counsel opposed any upward departure to a risk level three classification.
In a bench decision following the hearing, and in a subsequent written decision and order entered May 24, 2018, the Supreme Court, inter alia, granted the People's request for an upward departure, and designated the appellant a level three sex offender. The court's written decision noted that the familial relationship between the appellant and the victim gave rise to an abuse of trust and to feelings of betrayal and hopelessness on the victim's part, and was not properly accounted for in the Guidelines or in the RAI. However, the court additionally referenced other aggravating circumstances in its bench decision, finding that "[t]he abuse took place in [the victim's] own home during the times when her mother was not there and in the presence of her siblings" (emphasis added), an observation which underscored the court's subsequent statement in its written decision that the appellant's conduct exhibited a "demonstrated degree of depravity."
On this appeal, the appellant challenges the granting of the upward departure, contending that it was premised solely on the familial relationship he shared with the victim, which he asserts is already taken into account by the Guidelines and therefore cannot serve as the basis for an upward departure in risk level classification. The People disagree, maintaining that since the familial relationship is not mentioned in risk factor 7 of the RAI, and since no points are assessed for it therein, that relationship constitutes a risk factor that is not adequately taken into account by the Guidelines, and may therefore be used to support the upward departure. The People further maintain that the Supreme Court's classification of the appellant as a level three sex offender was not based solely upon his familial relationship with the victim, but also upon the egregious and abhorrent nature of the criminal acts he committed, some of which occurred in the presence of his other children.
Analysis
As a preliminary matter, we note that the New York State Sex Offender Registry indicates that the appellant was deported to his native country of Mexico on July 11, 2018, during the pendency of this appeal. We agree with the parties that the appellant's involuntary deportation poses no impediment to our consideration of the present appeal. Indeed, we have previously determined that such deportation neither undermines a SORA defendant's due process right to appeal nor renders that appeal academic, especially given the "practical consequences with respect to SORA registration requirements" that flow from an offender's risk level classification (People v Shim, 139 AD3d 68, 76; see People v Del Rosario, 36 NY3d 964, 965; People v Alas, 140 AD3d 841; People v Azeez, 138 AD3d 945). Accordingly, we address the merits of the appeal below.
Familial Relationship
In order to achieve the goal of protecting the public from recidivist conduct by sex offenders (see People v Stevens, 91 NY2d 270, 275), the legislature enacted SORA and charged the Board with the task of recommending a risk level classification for each sex offender nearing release from incarceration (see Correction Law § 168-l[6]). To assist in the classification process, the legislature directed the Board to develop uniform Guidelines (see id. § 168-l[5]), and the Board further created the RAI as a tool through which to evaluate an offender's risk of reoffending or danger to the community. Employing the Guidelines and the RAI, the Board considers a number of so-called risk factors to which it has assigned point values, and then tallies an overall numerical score for each offender. That score is then used by the Board to place the offender in one of three [*3]risk level classifications, which have correspondingly greater registration and notification requirements with which the offender must comply (see Correction Law §§ 168-h, 168-i, 168-j; People v Mingo, 12 NY3d 563, 570-571; People v Stevens, 91 NY2d at 275).
The resulting classification is not binding on the courts; rather, it is presumptive in nature, with "[t]he expectation [being] that the instrument will result in the proper classification in most cases so that departures will be the exception—not the rule" (Guidelines at 4; see People v Howard, 27 NY3d 337, 341; People v Sanchez, 186 AD3d 880, 882; People v Sprinkler, 162 AD3d 802; People v Curry, 158 AD3d 52, 58). The SORA court is then obligated to conduct a hearing at which the People must prove the facts supporting the determination they seek by clear and convincing evidence (see Correction Law § 168-n[3]; People v Mingo, 12 NY3d at 571). While the court is not bound by the Board's recommendation, it is required by statute to apply the Guidelines in determining whether to accept that recommendation or reject it in favor of alternative findings based on the evidence adduced at the hearing (see Correction Law §§ 168-d[3]; 168-n[2]; People v Gillotti, 23 NY3d 841, 852, 859).
As noted, the People in the present case sought, and the Supreme Court granted, an upward departure in the appellant's risk classification from a level two to a level three. The standards required for such a departure are well settled: the court must first determine whether the aggravating factors identified by the People are, as a matter of law, of a kind or to a degree not adequately taken into account by the Guidelines (see Guidelines at 4; People v Gillotti, 23 NY3d at 861). This is "a legal question for the court, based upon an interpretation of the Guidelines and SORA" (People v Wyatt, 89 AD3d 112, 121; see People v Curry, 158 AD3d at 58). Significantly, to permit an upward departure, the aggravating factors "must tend to establish a higher likelihood of reoffense or danger to the community" (People v Wyatt, 89 AD3d at 123; see People v Council, 189 AD3d 1275; People v Ciccarello, 187 AD3d 1224, 1225), and "'[w]here the alleged factor[s] [are] taken into account by the Guidelines or [are] not related to the risk of reoffense and danger to the community, as a matter of law a departure is not warranted'" (People v Curry, 158 AD3d at 58, quoting People v Wyatt, 89 AD3d at 121). Next, the court must determine whether the People have established, by clear and convincing evidence, the actual existence of the aggravating factors in the particular case before the court (see Correction Law § 168-n[3]; People v Gillotti, 23 NY3d at 861-862).
Assuming the foregoing requirements have been satisfied, the court is then vested with the discretion to grant the upward departure, but it is not obligated to do so. Rather, in consideration of the unique circumstances presented by each case, "the court must exercise its discretion by weighing the aggravating . . . factors to determine whether the totality of the circumstances warrants a departure to avoid an . . . under-assessment of the defendant's dangerousness and risk of sexual recidivism" (People v Gillotti, 23 NY3d at 861; see People v Sincerbeaux, 27 NY3d 683, 689-690; People v Knox, 12 NY3d 60, 70; People v Johnson, 11 NY3d 416, 421). Any such departure must be "'based upon the facts in the record'" (People v Sanchez, 186 AD3d at 882, quoting People v Abdullah, 31 AD3d 515, 516), as gleaned from evidence such as "admissions from the offender, statements from victims, and reports from probation officers, parole officers, corrections counselors, or other reliable sources" (People v Sincerbeaux, 27 NY3d at 688; see Guidelines at 5).
Here, in seeking an upward departure, the People relied principally, although not exclusively, upon the familial relationship between the appellant and the victim as an aggravating factor of a kind, or to a degree, that is otherwise not adequately taken into account by the Guidelines. In support, they observed that the RAI does not mention familial relationships at all under risk factor 7, which authorizes the assessment of points against an offender based on the nature of that offender's relationship with the victim, limited to the following circumstances:
"Factor 7: Relationship Between Offender and Victim
"The offender's crime (i) was directed at a stranger or a person with whom a relationship had been established or promoted for the primary purpose of victimization or (ii) arose in the context of a professional or a vocational relationship between the offender and the victim and was an abuse of that relationship (20 pts)" (Guidelines, risk factor 7).
Consistent with the People's reasoning, our Court, in a number of decisions, has suggested that the absence of any reference to a familial relationship in risk factor 7 indicates that it is an aggravating circumstance not adequately taken into account by the Guidelines, and we have [*4]held that such a relationship, often in tandem with other aggravating factors, provides an adequate basis for an upward departure in the offender's risk level classification due to the betrayal of trust that characterizes an intrafamilial sex offense (see People v Michaux, 157 AD3d 735, 736; People v Celleri, 138 AD3d 708; People v Montes, 134 AD3d 1083, 1083-1084; People v Frosch, 69 AD3d 699, 699-700; People v Hill, 50 AD3d 990, 991).
However, in People v Cook (29 NY3d 121, 128), which involved the defendant's commission of sex offenses against the children of his longtime family friends, the Court of Appeals explored the underlying rationale of risk factor 7, making it clear that "[i]f abuse of trust was a fundamental consideration under risk factor 7, the Guidelines would potentially require the assessment of points in almost all relationships, including familial relationships which are specifically excluded by the Commentary and by the plain language of the Guidelines" (emphasis added). Indeed, the discussion pertaining to risk factor 7 in the Guidelines demonstrates that the inclusion of familial relationships in that risk factor was in fact expressly considered—and deliberately rejected—by the Board based on its determination that offenders who victimize family members do not pose the same risk of recidivism or danger to the community as offenders who target strangers. Thus, the Board specifically noted, for example, that "[a]n uncle who offends against his niece generally would not fall into this category," (Guidelines at 12) commenting that "[t]his, of course, is not meant to minimize the seriousness of cases where the relationship is other than that of stranger or professional—e.g., familial. The need for community notification, however, is generally greater when the offender strikes at persons who do not know him [or her] well or who have sought out his [or her] professional care" (id. at 12 n 8). The Court of Appeals went on to conclude that "the purpose of the Guidelines [is] to require enhanced community notification where abuse occurs in more distant relationships, which indicate an increased risk of reoffending" (People v Cook, 29 NY3d at 128 [emphasis added]; see People v Johnson, 11 NY3d at 419 ["[t]he Legislature's and the Board's concern with sex offenders who direct their crimes at strangers is easily understandable . . . and people who do that to people they do not know pose a special danger to the community . . . , [warranting] a heightened concern for public safety and need for community notification" (internal quotation marks omitted)]). Thus, relying solely upon the existence of a familial relationship between the offender and the victim as a basis for an upward departure to a higher risk level classification, which poses potentially far more serious consequences to the offender than the assessment of points under risk factor 7 of the RAI, would be manifestly inconsistent with this express purpose of the Guidelines, and would effectively nullify the Board's expert determination that greater danger exists, and a commensurate enhancement of notification requirements is necessary, where the victim is a stranger rather than a family member.
Given the foregoing, it is clear that the Board has already taken familial relationships between offenders and victims into account in the Guidelines, and has expressly determined that they should be omitted from the RAI because such relationships do not pose a greater risk of reoffense or danger to the public [FN1]. Indeed, our Court has previously held this to be the case. In People v Mota (165 AD3d 988), the defendant had been convicted of committing a sex offense against a family member. He subsequently appealed from his designation as a level three sex offender. Citing the Guidelines and People v Cook (29 NY3d 121), we determined that the SORA court erred in granting the People's request for an upward departure based on the familial relationship between the defendant and his victim, since "the defendant's abuse of trust within a family relationship is already adequately accounted for by the Guidelines" and thus did not qualify as "an aggravating . . . factor [*5]of a kind, or to a degree, [not otherwise adequately taken into] account by the guidelines" (People v Mota, 165 AD3d at 989 [internal quotation marks omitted]). Inasmuch as the Board has already determined in the Guidelines that a familial relationship between an offender and his or her victim does not warrant the imposition of points on the RAI because it poses a comparatively lower risk of reoffense and danger to the public, that relationship, without more, likewise will not constitute an appropriate aggravating factor to justify an upward departure to a higher risk level.
In view of the fact that the Board is "composed of 'experts in the field of the behavior and treatment of sex offenders'" (People v Curry, 158 AD3d at 53, quoting Correction Law § 168-l[1]), "and the fact that it drafted the Guidelines at the direction of the legislature (see Correction Law § 168-l[5]), courts should give careful consideration to the Board's interpretations of those Guidelines" (People v Cook, 29 NY3d at 129). Here, the Board has unequivocally expressed its considered professional judgment that offenders who abuse members of their own family pose a lower risk of reoffense and danger to the community, and therefore require correspondingly less stringent reporting requirements. According due deference to the Board's Guidelines, and in light of the decision of the Court of Appeals in People v Cook (29 NY3d 121), we reaffirm our holding in People v Mota (165 AD3d 988) and reiterate that the existence of a familial relationship between an offender and his or her victim, standing alone, does not constitute an adequate basis for an upward departure in the offender's risk level classification. To the extent that any of our prior decisions, including those previously cited herein, may be read to suggest that such a relationship, by itself and in the absence of some other appropriate aggravating factor, may suffice as the predicate for such an upward departure, those decisions should no longer be followed for that proposition. In so determining, we in no way discount the extraordinary degree of betrayal inherent in the commission of intrafamilial sex offenses. Indeed, it hardly appears that the devastating psychological and emotional impact upon the victims of such offenses—especially young children— can be overstated, and the exploitation of the familial relationship in this manner is truly abhorrent. Nevertheless, "SORA is regulatory rather than criminal in nature" (People v Wells, 138 AD3d 947, 951) and its risk assessment scheme is not intended to serve as a form of punishment (see People v Gravino, 14 NY3d 546, 556-557); rather, its purpose is to protect the public by weighing those factors which have been determined to pose an increased risk of recidivism and/or danger to the community (see People v Cook, 29 NY3d at 125; People v Stevens, 91 NY2d at 275). In deferring to the Board's professional judgment and expertise, and concluding that the existence of a familial relationship between an offender and his or her victim does not by itself support an upward departure, we adhere to that legislatively ordained purpose.
Other Aggravating Factors
Nevertheless, while the existence of a familial relationship with the victim, standing alone, will not qualify as a basis for an upward departure, nor will that familial relationship serve to insulate the offender from such a departure where it is warranted by other aggravating factors in the case. A clear example of this principle is the recent decision of the Court of Appeals in People v Del Rosario (36 NY3d 964), in which the People initially argued that an order upholding an upward departure should be affirmed because it was appropriately based on both the abuse of trust of the familial relationship by the offender, and by his commission of the offense with the motive of exacting revenge against a third party (see People v Del Rosario, 170 AD3d 759, affd 36 NY3d 964). In affirming, the Court of Appeals did not rely on the familial relationship between the offender and the victim as a valid basis for the upward departure,[FN2] but instead sustained the upward departure "based on the People's proof that defendant raped the victim in order to take revenge upon someone other than the victim—a risk factor not adequately captured by the [Guidelines]" (People v Del Rosario, 36 NY3d at 965).
Here, much of the People's presentation to the Supreme Court at the SORA hearing in support of their request for an upward departure in the appellant's risk level classification concerned the betrayal of trust arising out of the familial relationship between the offender and the [*6]victim. However, the People also presented clear and convincing evidence, including the appellant's own statement, the victim's grand jury testimony, and various evaluative reports, establishing the extreme heinousness, egregiousness, and depravity of the appellant's acts, especially the disregard he exhibited for the welfare of the three other children in the home by brazenly committing at least one of the attacks in their presence and on the same bed upon which the youngest child was lying. The court expressly relied upon these other aggravating circumstances in granting the upward departure, citing to the systematic and premeditated nature of the attacks and the fact that the abuse occurred in the presence of the other children, thereby demonstrating the egregiousness and depravity of the appellant's conduct.
Based upon the foregoing evidence in the record, and particularly in view of the brazenness, the depravity, and the disregard for the welfare of the other children exhibited by the appellant in attacking the victim in their presence, we conclude that the Supreme Court's determination granting the People's request for an upward departure in this case constituted a provident exercise of discretion, since it was supported by clear and convincing evidence of the existence of aggravating factors of a kind, or to a degree, not adequately taken into account by the Guidelines, and which tended to establish a higher likelihood of reoffense and/or danger to the community, thus warranting an upward departure from the appellant's presumptive risk level under the totality of the circumstances (see People v Gillotti, 23 NY3d at 861; People v Council, 189 AD3d at 1276; People v Ciccarello, 187 AD3d at 1226; People v Pavia, 142 AD3d 655, 656; People v Shim, 139 AD3d at 76-77). Accordingly, notwithstanding our determination that the familial relationship between the appellant and the victim by itself is an inadequate basis for the upward departure, based on the independent aggravating factors set forth above, the order is affirmed.
RIVERA, DILLON and IANNACCI, JJ., concur.
ORDERED that the order is affirmed, without costs or disbursements.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1:It bears noting that, like the RAI, the Static-99R, a "different assessment tool[ ] which consider[s] a variety of risk factors, some of which are taken into account by New York's RAI, and some of which are not" (People v Curry, 158 AD3d at 60), and which has been referred to as "the most widely used sex offender risk assessment instrument in the world" (Static 99 Clearinghouse, http://www.static99.org/ [last accessed Apr. 20, 2021]), also intentionally omits the scoring of points against an offender based on a familial relationship with the victim, adding points only for unrelated and stranger victims (Static-99R Coding Form, available at http://www.static99.org/ [last accessed Apr. 20, 2021]). The corresponding Coding Rules explain that "[r]esearch indicates that offenders who offend only against family members recidivate at a lower rate compared to those who have victims outside of their immediate family . . . Having victims outside the immediate family is empirically related to a corresponding increase in risk" (Amy Phenix, Yolanda Fernandez, Andrew J.R. Harris, Maaike Helmus, R. Karl Hanson & David Thornton, Static-99R Coding Rules, Revised - 2016, at 79, available at http://www.static99.org/ [last accessed Apr. 5, 2021]).

Footnote 2:It is significant that at the oral argument of the case before the Court of Appeals, the Westchester County District Attorney's Office changed course and conceded that the abuse of trust arising from the familial relationship between the offender and the victim, by itself, "could not be a basis for an upward departure." Curiously, however, despite the fact that an analogous familial relationship issue is before us on the present appeal, that same office has not made a similar concession to this Court.